246 F.2d 830
 SECURITY NATIONAL INSURANCE COMPANY, a foreign corporation,
and Charles R. Freeman, Appellants,
v.
SEQUOYAH MARINA, Inc., a corporation, Powell Cobb, Pauline
Gatewood, Roswell Susman, Fred Lorenz, W. L.
Sawyer, W. G. Hudson, Homer Moore and
Ralph Aggars, Appellees.
 No. 5530.
 United States Court of Appeals Tenth Circuit.
 June 12, 1957.
 
 Duke Duvall, Oklahoma City, Okl. (Bryan W. Tabor, Tulsa, Okl., was with him on the brief), for appellants.
 Julian B. Fite, Muskogee, Okl. (Kay Wilson, Muskogee, Okl., Bassman & Gordon, Claremore, Okl., Hughey Baker, Tulsa, Okl., Douglas Garrett, Muskogee, Okl., and Hugh Bland and Paul E. Gutensohn, Ft. Smith, Ark., Anthis & Gotcher, Thomas L. Gibson and A. Carl Robinson, Muskogee, Okl., were with him on the brief), for appellees.
 Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.
 PHILLIPS, Circuit Judge.
 
 
 1
 This is an appeal from a judgment in a declaratory judgment action adjudging that one Fred Lowrance was within the coverage of a liability insurance policy issued to Charles R. Freeman by Security National Insurance Company.[1]
 
 
 2
 The action was brought by the Insurance Company and Freeman against Sequoyah Marina, Inc., Powell Cobb, Pauline Gatewood, Roswell Susman, Fred Lowrance, W. L. Sawyer, W. G. Hudson, Homer Moore and Ralph Aggars.
 
 
 3
 The facts are not in dispute. Freeman was the owner of a Matthews Custom-Bilt Inboard Motor Boat, which he kept on Fort Gibson Lake in Oklahoma, and which he docked at a private dock rented by him from Sequoyah Marina and used for non-business pursuits.
 
 
 4
 Shortly prior to August 13, 1955, Freeman requested Lowrance, a mechanic, to repair the motor in the boat, which was then located at the dock. On that date Lowrance went to the boat and checked the starter. He had the keys to the boat, including the ignition key. He found that the motor was out of oil and the cylinders had no lubricant. He reported that condition to Mr. Freeman and advised him that he would return to the boat and put in oil and lubricate the cylinders. On the morning of August 14, 1955, Lowrance returned to the boat, put three quarts of oil in the crank case, and put Marvel oil in the spark plug holes to lubricate the cylinders. He then replaced the spark plugs and touched the starter button. Immediately thereupon an explosion occurred, resulting in property damage to Sequoyah Marina, W. L. Sawyer, W. G. Hudson, Homer Moore, Ralph Aggars and Roswell Susman.
 
 
 5
 At the time of the commencement of the declaratory judgment action, Moore, Cobb, Gatewood and Hudson had commenced actions against Freeman to recover the property damages alleged to have been suffered by them as a result of the alleged negligence of Lowrance. Cobb and Gatewood filed answers and counterclaims against Freeman, the Insurance Company, Lowrance and Sequoyah Marina, Moore, Sawyer, Susman, Aggars, Sequoyah Marina and Hudson filed answers and cross-claims or counterclaims against Freeman, Lowrance and the Insurance Company.
 
 
 6
 The court found that Lowrance was acting as an independent contractor at the time of the accident.
 
 
 7
 The policy was issued on July 8, 1954, and was in full force and effect at the time of the accident. The pertinent provisions of the policy read as follows:
 
 
 8
 'Security National Insurance Company (A Stock Insurance Company, herein called the Company)
 
 
 9
 'Agrees with the insured, named * * *
 
 
 10
 'Insuring Agreements
 
 
 11
 'I Coverage H-- Liability
 
 
 12
 'To pay on behalf of the insured all sums which the insured shall become legally obligated to pay * * * as damages because of injury to or destruction of property, including the loss of use thereof.
 
 
 13
 '* * * * 'III. Definition of insured
 
 
 14
 'The unqualified word 'insured' includes (a) the named insured, * * * (c) with respect to animals and watercraft owned by an insured, any person or organization legally responsible therefor, * * *.
 
 
 15
 '* * * *
 
 
 16
 'Exclusions
 
 
 17
 'This policy does not apply:
 
 
 18
 '(a) to any business pursuits of an insured, other than activities therein which are ordinarily incident to non-business pursuits; * * *;'
 
 
 19
 A rider attached to the policy read, in part, as follows:
 
 
 20
 'Watercraft Coverage
 
 
 21
 '(For Use with Comprehensive Personal Liability Policies * * *)
 
 
 22
 'It is agreed that such insurance as is afforded by the policy under Coverages H * * * applies with respect to the ownership, maintenance or use, including loading and unloading, of the watercraft designated in the schedule below.
 
 
 23
 'This insurance does not apply:
 
 
 24
 '* * * *
 
 
 25
 '2. while said watercraft is used to carry persons for a charge or is rented to others.
 
 
 26
 "Schedule
 
 
 
 Designation of Watercraft
 
 
 
 27
 Type Name and Overall Rated Speed Premium
 
 
 28
 (Motor Identification Length Miles Per Hour
 
 
 29
 or Sail) Number (In Feet) (Motorboats Only)
 
 
 
 Inboard Matthews Custom 33 ft. 16 to 30 56.93
 Motor Built
 Model FVZD
 Motor #F-3047 "
 
 
 
 30
 The trial court, having decided by final judgment the issue of coverage, reserved for further adjudication the negligence claims, under Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.
 
 
 31
 The first question presented is whether Lowrance was 'legally responsible' for the boat at the time of the explosion. We think 'responsible' as here used means under a duty to use or operate the boat or the power plant and equipment thereof properly and liable and answerable for a failure so to do. It may be implied from physical possession of the boat by Lowrance and his authority and power to act with respect thereto.[2] Lowrance was in possession, charge and control of the boat for the purpose of servicing it and putting it in operating condition and doing whatever was incident to accomplishing that purpose. He was authorized to exercise his independent judgment with respect to what was necessary to be done. He had implied authority to make a test run after the servicing was completed. He testified that it was his practice to do so in repairing boats at the dock. The fact that he did not reach the point of making a test run is not material. It is the existence of the power and not its exercise which determines the relationship of Lowrance to the boat.[3] Had an accident occurred while he was making a test run with the implied consent of Freeman, we think there could be no doubt he would have been legally responsible for the boat[4] and we conclude he was legally responsible for the boat at the time of the explosion.
 
 
 32
 It is significant that automobile insurance companies have deemed it advisable to expressly exclude repairmen from the coverage of their liability policies.[5] No such exclusion appears in the policy in the instant case.
 
 
 33
 Sequoyah Marina was not legally in charge of the boat. It simply rented docking space to Freeman at its private dock. Their relationship was that of lessor and lessee, not bailor and bailee.[6]
 
 
 34
 The second question is whether Lowrance was excluded by the provision: 'This policy does not apply : (a) to any business pursuits of an insured, other than activities therein which are ordinarily incident to non-business pursuits; * * *.'
 
 
 35
 Counsel for the Insurance Company contend that Lowrance was engaged in a business pursuit and that his activities were not ordinarily incident to a non-business pursuit. Freeman used the boat solely for non-business purposes. The sole purpose of the repairs was to put the boat in operating condition for non-business use by Freeman. Incident means that which appertains to something else which is primary.[7] Here the activities of Lowrance in repairing the boat were necessary to put it in condition for non-business use by Freeman. They clearly appertained to that use. The making of such repairs from time to time was an ordinary activity on the boat. Lowrance was not using the boat for business pursuits. He was merely carrying out his business pursuit of repairman on the boat for the purpose of making repairs essential and pertinent to the primary use of the boat for non-business purposes. We conclude that the activities of Lowrance in repairing the boat were ordinarily incident to the non-business use of the boat by Freeman, the owner, and were not within the exclusion.
 
 
 36
 The judgment is therefore affirmed.
 
 
 
 [1]
 Hereinafter called the Insurance Company
 
 
 [2]
 O'Roak v. Lloyds Casualty Co., 285 Mass. 532, 189 N.E. 571, 573; Ohio Power Co. v. N.L.R.B., 6 Cir., 176 F.2d 385, 387
 
 
 [3]
 Ohio Power Co. v. N.L.R.B., 6 Cir., 176 F.2d 385, 388, 11 A.L.R.2d 243
 
 
 [4]
 See Allen v. Travelers Indemnity Co., 108 Vt. 317, 187 A. 512, 514; West Michigan D. & M. Corp. v. St. Paul Mercury Ind. Co., D.C.W.D.Mich., 82 F.Supp. 403; affirmed St. Paul Mercury Ind. Co. v. West Michigan D. & M. Corp., 6 Cir., 179 F.2d 242; Maryland Casualty Co. v. Ronan, 2 Cir., 37 F.2d 449, 72 A.L.R. 1360; Hawkeye Casualty Co. v. Rose, 8 Cir., 181 F.2d 157, 72 A.L.R. 1414, note VIII
 
 
 [5]
 See Asnis v. Bankers' Indemnity Co., 110 N.J.L. 134, 164 A. 307
 
 
 [6]
 Reimers v. Petersen, 237 Iowa 550, 22 N.W.2d 817, 820; 61 C.J.S. Motor Vehicles 724, pp. 867-868
 
 
 [7]
 The Robin Goodfellow, D.C.W.D.Wash., 20 F.2d 924, 925; Thomas v. Harmon, 46 Hun, N.Y., 75, 77; Hall v. Union Light, Heat & P. Co., D.C.Ky., 53 F.Supp. 817, 818; State v. McCollum, 17 Wash.2d 85, 136 P.2d 165, 141 P.2d 613