State Farm Fire & Casualty Company, a Corporation, Plaintiff-Appellant, v. Bruce P. MacDonald, Defendant-Appellee.

Gen. No. 67–16.

Second District.

October 4, 1967.

Haye and Keegan, of Rockford, for appellant.

Roszkowski and Paddock, of Rockford, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

15

State Farm Fire & Casualty Company brought suit for declaratory judgment against Bruce P. MacDonald for the construction of a certain clause in a "Homeowner's Policy" issued by it to the defendant. The suit was brought to determine whether the plaintiff was obligated to defend MacDonald in another action then pending in the Circuit Court of Winnebago County, arising out of the accidental injury in question, and whether it was obligated to pay any judgment which might be entered against him in that litigation.

MacDonald was employed as a repairman by William Lamps, doing business as Lamps Elevator Sales & Service. On Saturday, September 5, 1964, which was not a regular work day for the defendant, his employer called and asked him to repair a freight elevator at Davis Furniture Company Warehouse in Rockford. On this occasion the defendant saw and spoke to John McNaughton, whom he had seen before at the warehouse and knew as "John." In the course of making the repairs, the defendant went to look for a piece of wood to use as a prop for the elevator door. He found a rubber mallet on a work bench on the premises, which would serve such purpose. In walking back to the elevator with the mallet in his hand, the defendant passed in front of McNaughton, who was standing with his back against a fire door. While so doing and in an impulsive gesture, MacDonald suddenly raised the mallet and struck it against the fire door behind McNaughton's head. Apparently, this was done as horseplay and with no intention of touching McNaughton. Unfortunately, the hammer rebounded and struck McNaughton on the head, injuring him.

McNaughton brought suit against William Lamps for damages suffered as the result of this injury. Prior to the trial, Lamps filed a third-party complaint against MacDonald for indemnification for all losses which he

might incur in connection with the lawsuit initiated by McNaughton. MacDonald then gave notice to the plaintiff in this cause, State Farm Fire & Casualty Company, and demanded that the plaintiff defend him by virtue of the provisions of the "Homeowner's Policy" issued to him by plaintiff on December 13, 1963.

In the original lawsuit, the jury returned a verdict for McNaughton and against William Lamps in the sum of $50,000 and costs of suit. The plaintiff then brought this declaratory judgment action to determine its obligations to MacDonald in connection with Lamps' third-party action against him.

Under Section II of the policy the plaintiff undertook to provide "Comprehensive Personal Liability (Bodily Injury and Property Damage)" coverage for the defendant and thereby agreed:

> ". . . To pay all sums which the Insured shall become legally obligated to pay as damages because of bodily injury sustained by other persons and property damage, and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, . . . ."

The policy also provided that:

> "Section II of this Policy Does Not Apply: (a) (1) to any business pursuits of an Insured, other than activities therein which are ordinarily incident to non-business pursuits, . . . ."

The plaintiff contends that the act of MacDonald in accidentally striking McNaughton with the mallet was within the exception to the exclusionary language of the policy.

At the time of the accident, MacDonald was engaged in his usual occupation—that of repairing an elevator.

It must be conceded that he was generally engaged in a "business pursuit." The question which must be resolved is whether the defendant's impulsive act of striking the hammer against the fire door was an activity "ordinarily incident to non-business pursuits."

Only two cases have been brought to our attention concerning the meaning of the identical insurance clause in question. In Security Nat. Ins. Co. v. Sequoyah Marina, Inc., 246 F2d 830 (CA 10th 1957), the insured, Freeman, owned a boat which he used strictly for pleasure and which was kept at a dock rented from Sequoyah Marina, Inc. He hired a repairman named Lowrance to do some work on the boat. In the course of making the repairs, Lowrance started the boat's engine, which resulted in an explosion and damage to the property of Sequoyah Marina and others. Freeman's insurer argued that since Lowrance was engaged in his usual occupation at the time of the explosion, the exclusionary language of the policy applied. The court pointed out, quite logically, that it was Freeman's use of the boat, not Lowrance's occupation, which was significant, and at page 833 held that the "activities of Lowrance in repairing the boat were ordinarily incident to the non-business use of the boat by Freeman, the owner, and were not within the exclusion."

In Edwards v. Trahan (La App), 168 So2d 365 (1964), the insured was in the business of baling hay. He was sued for personal injuries suffered as the result of an accident which occurred at night, on a public highway, when a car collided with his unlighted, tractor-driven hay wagon. The insured had towed the wagon to a farm owned by a third party for the purpose of transporting hay back to his own home, which hay he had purchased to feed his own livestock. While en route home, the collision occurred. In that case, the court also held the clause of the policy did not exclude cover-

age since the insurer had not shown that the insured was engaged in a "business pursuit."

The question in the case before us is not as readily resolved as that posed in the respective foregoing cases. We must determine whether the momentary deviation from his "business pursuits"—the horseplay with the mallet—should be classified as an activity ordinarily incident to nonbusiness pursuits, and whether the swinging of the mallet at the time, place and in the manner indicated, had any business purpose whatsoever. Apparently, there are no cases which have decided this precise question. The language of the insurance contract expressing this exception to the exclusion of coverage tends to obscure rather than elucidate the meaning of the clause. The plaintiff suggests a hypothetical situation which, in its opinion, would be covered under this particular contract clause. It suggests that of a salesman entertaining a customer on a golf course. In such event, the plaintiff contends that the salesman would be engaged in a "business pursuit," and if, in the course of the game, he injured his customer while swinging his golf club, the injury would come within the exception to the exclusion of policy as an activity ordinarily incident to nonbusiness pursuits.

Apparently, MacDonald's deviation from his business pursuit is without significance to the plaintiff, and the fact that the horseplay bears no relation to the business purpose or pursuit, also causes it no concern. It appears to us that the hypothetical situation suggested by the plaintiff may readily be considered as analogous to the case before us. Indeed, we find an act of horseplay at least as alien to repairing an elevator and as akin to a nonbusiness pursuit as an inadvertent and injurious golf swing, which may have business overtones. But regardless of the propriety of such analogy, it is our task

19

to construe the policy clause in question with reference to the facts of this particular case.

■ It is beyond dispute that the meaning of the phrase, "other than activities therein which are ordinarily incident to non-business pursuits" is unclear, ambiguous, and it has long been recognized that an insurance contract is unlike most contracts. In an insurance contract, absent statutory requirements, the company determines and drafts its policy provisions. The insured takes the contract as he finds it. Any lack of clearness in the meaning of such contract is the responsibility of the insurer. That construction of the policy will be adopted which favors the insured and resolves the uncertainty in his favor. Midwest Dairy Products Corp. v. Ohio Cas. Ins. Co. of Hamilton, Ohio, 356 Ill 389, 392, 393, 190 NE 702 (1934) ; Iowa Nat. Mut. Ins. Co. v. Fidelity & Casualty Co., 62 Ill App2d 297, 303, 210 NE2d 622 (1965) ; Country Mut. Ins. Co. v. Bergman, 38 Ill App2d 268, 277, 278, 185 NE2d 513 (1962).

■ A construction of the clause of the policy in question which resolves the uncertainty in favor of the insured can be made without perverting the ordinary meaning of the exclusionary clause. Under the language of the clause, it is definite and clear that certain types of activities which occur as a part of "business pursuits" were meant to be covered by the contract and included within the protection afforded by the policy. The incident under consideration occurred during a business pursuit, and it is at least as logical to conclude that the defendant's impulsive action, which caused the injury, was the type ordinarily incident to a nonbusiness pursuit, as it would be to reach an opposite determination. Equivocal expressions in an insurance contract whereby an insurer seeks to narrow the range of its liability are properly construed most strongly against the insurer. Country Mut. Ins. Co. v. Bergman, supra.

Under the circumstances of this case and the pertinent provisions of the policy, we believe that further inquiry into the enigma of the meaning of the exception to the exclusionary clause would be fruitless.

■ We are of the opinion that the trial court was correct in holding that the defendant is entitled to the benefits of the provisions of his "Homeowner's Policy," and that the plaintiff is obligated to defend the defendant in the pending third party action and to pay any judgment entered therein against the defendant and in favor of Lamps, to the extent of the policy limits.

Judgment affirmed.

MORAN and BAUER, JJ., concur.