496 P.2d 740

Walter Lee **WILLIAMS**, Plaintiff-Appellant,

v.

Delfin R. **HERRERA** et al., Defendants-Appellees.

No. 803.

Court of Appeals of New Mexico.

April 14, 1972.

John J. Duhigg, Bruce P. Moore, Albuquerque, for plaintiff-appellant.

J. T. Paulantis, Iden & Johnson, Albuquerque, N. M., for defendants-appellees.

## OPINION

SUTIN, Judge.

Williams appeals from a summary judgment granted Herrera and Farmers Insurance Group, arising out of a fall from a ladder with a latent defective rung.

We affirm as to Herrera and reverse as to Farmers Insurance Group.

The trial court found, (1) that there are insufficient facts to establish negligence of Herrera; and (2) that the policy of insurance does not afford medical coverage, and concluded that no genuine issue of material fact was present.

1. *No Issue of Fact Exists on Negligence of Herrera.*

Williams, 38 years of age, was a brick mason and self-employed. In the latter part of September or first part of October, 1969, he did all of the brick masonry work on the outside of the home of Herrera and built the fireplace inside. Herrera fur-

nished all of the materials. After the home was completed, Herrera advised Williams the fireplace was smoking, and asked Williams to extend the chimney and put a flue liner on the chimney. Williams agreed to do this work. There was no charge for this work. On the morning of January 19, 1970, Williams went to the Herrera home and Herrera furnished him with a ladder to use in the performance of the work. Williams was a business invitee. Williams did not want to bring his own ladder because he was on his way to Santa Fe. Herrera then advised Williams he could use Herrera's ladder.

Williams asked Herrera if his ladder was a good ladder because Williams was quite heavy, 196 pounds, and the flue liner was extra weight of 45 pounds, for a total of 241 pounds. Herrera said, "it was a good ladder, and Williams could use it."

Herrera furnished Williams a 12-foot wooden ladder, factory made, with round wooden rungs from top to bottom. Williams carried it around by the fireplace on the outside of the home and leaned it up against the roof. He got the flue liner out of his pickup and was working it up the ladder to take it up to the roof. The flue liner was eight inches by thirteen inches in diameter, 24 inches long, and weighed 45 pounds. To work it up the ladder, he would set the flue liner on a rung ahead of him, then step up and raise it to the next rung. Each rung looked all right. At the time of the accident, Williams put the flue liner on the roof, balanced it with one hand and started to step on the roof. The rung under his left foot broke in two places and Williams with the flue liner, fell to the ground and suffered injuries to his left leg and foot. He did not know what caused the rung to break.

In order to establish a prima facie case in support of summary judgment, Herrera, by affidavit, stated that the ladder was about 10 feet long and was, as far as he could tell, in good condition. He used the ladder whenever necessary, and did not see any defects in the ladder. He used the ladder when working on his house during the construction period and always felt the ladder was safe. He was still using the ladder.

Herrera also relied on the testimony of Williams that Williams did not know what caused the rung to break.

Williams relies upon two points for reversal of the Herrera summary judgment. (1) The trial court based the summary judgment upon erroneous standards; (2) Herrera did not show an absence of material issues of fact.

### (a) *Erroneous Standards*

The trial court found "that there are insufficient facts to establish that the accident complained of and resulting injuries were proximately caused by any act of negligence on the part of any of the defendants." This finding by the trial court does not support a summary judgment. It appears to say that the trial court weighed all of the facts and plaintiff failed to present sufficient facts to establish an act of negligence of Herrera.

When the trial court made findings of fact, it had a duty to find that Herrera had met the burden of showing that, as a matter of law, no act of negligence existed, and that Williams did not come forward with any evidence to create an issue of fact. Brock v. Goodman, 83 N.M. 580, 494 P.2d 1397 (Ct.App.), decided February 11, 1972.

It is not proper for the trial court or this court to weigh evidence. A summary judgment may be granted only when the basic facts are clear and undisputed, Johnson v. J. S. & H. Construction Co., 81 N.M. 42, 462 P.2d 627 (Ct.App.1969), but even where the basic facts are undisputed, summary judgment should be denied if equally logical but conflicting inferences can be drawn from the facts in favor of the party opposing a motion for summary judgment. Yeary v. Aztec Discounts, Inc., 83 N.M. 319, 491 P.2d 536 (Ct.App.1971).

However, findings of fact and conclusions of law are not required by our rules except in involved cases where the reason for the summary judgment is not

otherwise clearly apparent from the record. Wilson v. Albuquerque Board of Realtors, 81 N.M. 657, 472 P.2d 371 (1970). Since this is not an involved case, we may disregard the above findings of the trial court and determine whether the finding or statement of the trial court is correct that "there being no genuine issue of material fact present, [Herrera is] entitled to judgment as a matter of law."

### (b) *Herrera Showed an Absence of Material Issues of Fact*

Williams claims that Herrera negligently supplied and permitted Williams to use the ladder. He argues that Herrera had a duty to make the ladder safe for the use for which it was supplied, a duty to exercise reasonable care to discover any dangerous conditions and inform Williams of them, and a duty to inspect it for defects prior to supplying it for use.

■ Herrera's affidavit as to his own use of the ladder and his failure to see any defects in the ladder is a prima facie showing that he did not know and could not have discovered the latent defect; that he did exercise reasonable care to discover any dangerous conditions and could not have discovered any.

■ Williams relies on Restatement of Torts 2d, § 392 to support his claim. This section applies only where one supplies to another, a chattel like a ladder to be used for the supplier's business purposes or in which the supplier has a business interest. Herrera did not supply the ladder to be used for his business purposes or in which he had a business interest. Section 392, supra, is, therefore, not applicable.

■ Herrera merely loaned the ladder to Williams for his personal use. This does not of itself impose upon Herrera a duty to inspect the ladder in order to discover whether it is fit for the use for which it is supplied. Restatement of the Law, Torts 2d, § 388, Comment (M) (1965). No New Mexico cases on inspection can be found. Compare Metz v. Haskell, 91 Idaho 160, 417 P.2d 898 (1966).

Restatement of the Law, Torts 2d, § 405, states:

> One who directly or through a third person gives or lends a chattel for another to use, knowing or having reason to know that it is or is likely to be dangerous for the use for which it is given or lent, is subject to the same liability as a supplier of the chattel.

■ Section 388, Comment (M), supra, is applicable here. Herrera's affidavit establishes that he did not know or have reason to know the ladder was dangerous or likely to be dangerous for the use for which it was lent to Williams. He had no duty to inspect the ladder for defects.

■ New Mexico decisions indicate no liability on Herrera's part in this "loan" situation unless Herrera "knew or by the exercise of due care should have known" of the defect in the ladder. See Bradley v. Johnson, 60 N.M. 453, 292 P.2d 325 (1955); Ferran v. Jacquez, 68 N.M. 367, 362 P.2d 519 (1961); compare Villanueva v. Nowlin, 77 N.M. 174, 420 P.2d 764 (1966).

■ After Herrera established a prima facie showing that no genuine issue of material fact existed, it became the duty of Williams to show there was a factual issue present. Sanchez v. Shop Rite Foods, 82 N.M. 369, 482 P.2d 72 (Ct.App.1971). This he failed to do.

Summary judgment in favor of Herrera is affirmed.

### 2. *The Policy of Insurance Does Afford Medical Coverage.*

The trial court found "that the policy of insurance * * * does not afford medical coverage." A question of law is involved, not a question of fact. Does the insurance policy afford medical coverage?

Farmers Insurance Group issued Herrera a policy of insurance with coverage for medical payments to others. Farmers concedes that Williams' claim falls within this provision of the policy, but contends that Williams is denied medical coverage by

reason of several exclusions set forth in the policy.

First, under Exclusions, Section 1(c), states:

This policy does not apply:

\* \* \* \* \* \*

c. to bodily injury or property damage arising out of the rendering of or failing to render professional services;

■ Did Williams' bodily injuries arise out of the rendering of professional services? If the provision is unambiguous, we can determine the issue as a matter of law by an application of the policy language to the facts of the case. Baca v. New Mexico State Highway Department, 82 N.M. 689, 486 P.2d 625 (Ct.App.1971). If it is ambiguous, we must construe the policy to determine its coverage. In doing so, any ambiguity must be resolved against the insurer. Ivy Nelson Grain Co. v. Commercial Union Insurance Company, 80 N.M. 224, 453 P.2d 587 (1969).

The policy does not define the words "professional services." Neither has it been defined in New Mexico. A review of the meaning of the word "profession" shows that "it is difficult, if not impossible, to lay down any strict legal definition. \* \* \*" 72 C.J.S. Profession, pp. 1215–1220. The citation of cases would not be helpful. But it is our opinion that the term "professional services" is ambiguous and uncertain.

In Fowler v. First National Life Insurance Co. of America, 71 N.M. 364, 378 P.2d 605 (1963), the court said:

It is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of insured or his beneficiary and strictly as against insurer. Also, words, phrases or terms will be given their ordinary meaning unless by definitions in the policy or context in which the word is used requires some other meaning be given.

■ Since, in construing the policy coverage, we must resolve the ambiguity against the insurer, we hold that Williams, a stone mason, was not engaged in "professional services" while climbing a ladder at the time of the accident. Section 1(c), supra, is not applicable.

Second, under Exclusions, Section 1(d) states:

This policy does not apply:

\* \* \* \* \* \*

d. to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to nonbusiness pursuits; \* \* \*

Two questions are involved. (1) Did Williams' bodily injury arise out of business pursuits of Herrera? The policy does not define the term "business pursuits." What is a "business pursuit"? (2) After completion of the home, was Herrera engaged in a non-business pursuit?

Under General Condition 8(d) of the insurance policy, "business' means (1) trade, profession or occupation, including farming, and the use of any premises or portion of residence premises for any such purposes; \* \* \*."

Fowler v. First National Life Insurance Co. of America, supra, was followed in Scott v. New Empire Insurance Company, 75 N.M. 81, 400 P.2d 953 (1965), where the court said:

We decline to adopt a strict technical or legalistic interpretation of the terms of the policy, when it was fully within the power of the insurance company to affirmatively specify some meaning other than that understood by the average individual.

■ The rule is now clear that "where there is ambiguity, the test is not what the insurer intended its words to' mean, but what a reasonable person in the position of the insured would understand them to mean \* \* \*" and "the ambiguity is resolved against the insurer." Ivy Nelson Grain Co. v. Commercial Union Insurance Company, supra.

(1) Before the accident occurred, Herrera was building his own home. Whether this should be considered a "business pursuit," it is difficult to say. We believe it is ambiguous terminology because the average layman could disagree that in its ordinary meaning, building a home is a business pursuit. We resolve the ambiguity against the insurer and hold it was not a business pursuit.

(2) At the time of the accident, the home was completed. Williams was then doing a repair job on the Herrera home. When the home was completed, it became a non-business pursuit, and Williams' activity thereafter was ordinarily incident to a non-business pursuit and falls within the exception to Section 1(d), supra.

Section 1(d), supra, is not applicable.

The analysis stated above and the conclusions reached as to Exclusions 1(c) and 1(d) are supported by Crane v. State Farm Fire & Casualty Company, 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971); Home Insurance Company v. Aurigemma, 45 Misc.2d 875, 257 N.Y.S.2d 980 (1965); Edwards v. Trahan, 168 So.2d 365 (La. App.1964); Marx v. Hartford Accident & Indemnity Company, 183 Neb. 12, 157 N.W.2d 870 (1968); Security National Insurance Company v. Sequoyah Marina, Inc., 246 F.2d 830 (10th Cir. 1957); State Farm Fire & Casualty Company v. National Union Fire Insurance Company, 87 Ill.App.2d 15, 230 N.E.2d 513 (1967).

Third, under Exclusions, Section 3(b) (3) states:

This policy does not apply:

\* \* \* \* \* \*

b. to bodily injury to:

(3) any person while on the insured premises because a business is conducted or professional services are rendered thereon.

From the definitions of "business," supra, no trade, profession or occupation was conducted on the premises while Williams went there to work on the chimney. As heretofore stated, no professional services were rendered. This section is inapplicable.

Since the Exclusions are inapplicable, we hold that the policy of insurance did afford medical coverage to Williams.

The summary judgment granted Herrera is affirmed. The summary judgment granted Farmers Insurance Group is reversed.

It is so ordered.

WOOD, C. J., and HENDLEY, J., concur.