Wayne Lawrence **WILEY** and Rose Etta Wiley, Appellees,

v.

**TRAVELERS INSURANCE COMPANY,** Appellant.

No. 46374.

Supreme Court of Oklahoma.

Nov. 19, 1974.

Rehearing Denied May 20, 1975.

**1294**

Randle L. Graham, Oklahoma City, for appellees.

John T. Edwards, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellant.

LAVENDER, Justice:

The appellees, Wayne and Rose Wiley (Wileys), obtained judgment against Geibe (homeowner) for $7,724.85 in a personal injury action. Rose Wiley had been attacked and injured by one of homeowner's dogs at the Geibe residence while there in response to a classified ad and in anticipation of purchasing a St. Bernard puppy.

The appellant, Travelers Insurance Company (insurer), had issued to the homeowner Geibe a homeowner's insurance policy. The judgment creditors, Wileys, sought garnishment against the insurer as garnishee under the homeowner's insurance to collect the judgment. Insurer denied coverage under an exclusion clause as to "business pursuits" in the policy.

We hold the homeowner Geibe by breeding, raising, and selling St. Bernard puppies was engaged in a business pursuit under the homeowner's policy. That activity of the homeowner is included under the exclusion clause as to business pursuits. There is no coverage under the policy in this garnishment action as to the garnishee insurer.

The policy contains an exclusion as to personal liability insurance and personal medical payments [1]. It provides that kind of coverage shall not apply "to bodily injury or property damage arising out of business pursuits of an Insured except activities therein which are ordinarily incident to non-business pursuits; but this exclusion does not apply to the occasional or part-time business pursuits of any Insured who is a student under 18 years of age."

Homeowner Geibe held a job as a salesman. He traveled five days a week and earned in excess of $10,000 a year from that endeavor. Argument is made the part-time aspect of the dog operation prevents it from being a business pursuit. We think not.

Under General Conditions of the policy "business" is defined as "meaning a trade, profession or occupation * * *." We would agree the word "pursuit," as used in the exclusion, has only its ordinary understood sense, i. e. to go after, seek, chase, strive for, or engage in an avocation, hobby or the like. The American Heritage Dictionary 1062 (1973). "Engaging in an occupation" as a meaning for "business pursuits" used in the exclusion does not mean sole occupation or sole trade.

The exclusion uses the language "arising out of business *pursuits* * * * except

---

1. Policy is described as a THO 2 form; it contained "Coverage E—Personal Liability Insurance" and "Coverage F—Personal Medical Payment."

*activities* which are ordinarily incident to non-business *pursuits*; * * *." Use of the plural as to pursuits and activities negates any meaning as to sole or principal occupation or trade.

The exclusion has an exclusion. Occasional or part-time business pursuits of a student not 18 years old is expressly excluded from the exclusion. All other occasional or part-time business pursuits are under the exclusion of coverage.

An effort is made to distinguish between a hobby and a business pursuit. A business pursuit is denoted as "what one does for a living." A hobby is called "what one does for pleasure." We believe this distinction is artificial. One's livelihood may be, and hopefully is, one's greatest pleasure.

Can a hobby be a business pursuit? We believe the addition of a profit motive to an activity makes it a business pursuit. Insurer in its brief says the "addition of profit motive is all that is necessary to make an activity both a hobby and a business pursuit. We agree. Wileys, in their brief, cite Kelley v. United States, 202 F.2d 838, 841 (C.C.A. 10th, 1953) as defining business, saying:

> " 'Business' is a comprehensive term. It has been defined as that which 'occupies the time, attention and labor of men for the purpose of a livelihood or profit.' "

In a business pursuit the profit motive, or purpose of a profit, is important. Whether there is or is not actual profit is immaterial. Does a pursuit have to be successful from a profit standpoint before it is a business pursuit? If a business suffers a loss, was it not a business? The answers are obvious. Profit motive, not actual profit, makes a pursuit a business pursuit.

Dr. G., a veterinarian, testified:

"Q. Do you know the purposes of Mr. Geibe keeping these dogs?

A. Mr. Geibe, whom I became very close to and had a number of visits with, stated specifically to me that it was his lifelong ambition to raise Saint Bernards and he intended to retire raising them.

Q. Do you know whether or not Mr. Geibe sold Saint Bernard dogs?

A. Yes, Sir, for a very good fee."

Evidence indicated Geibe, the homeowner, sold puppies for $300 each; others for as little as $75. He gave some away. Geibe's barn had been extensively renovated as a kennel. He extensively fenced his yard. He advertised his puppies by running classified ads in the newspaper and by erecting a large sign of a St. Bernard dog in his yard with the word "Puppies" underneath. The case at bar was not the family pet litter sale. It was something more. Geibe, in his dog operation, was engaged in a "business pursuit." That activity was excluded from coverage under his homeowner's policy. The object to be accomplished by the homeowner's policy was to insure a home and not a business.

This appeal is limited in scope to the action in garnishment, a special proceeding. The judgment in the negligence action is not affected except for its enforcement in garnishment under the homeowner policy. The interpretation of the policy, with its exclusion is a law question. It is not a fact issue. In the case at bar, the facts necessary to apply the decided law question are not in dispute so as to require the weighing of evieence.

Certain rules already established in Oklahoma jurisprudence were used in resolving the issues of this case. In construing an insurance contract, its terms and words, if unambiguous, must be accepted in their plain, ordinary and popular sense. Penley v. Gulf Ins. Co., Okl., 414 P.2d 305 (1966). Parties to insurance contract are at liberty to contract for insurance to cover such risks as they see fit and are bound by terms of contract and courts will not undertake to rewrite terms thereof. The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result.

American Iron & Mach. Works Co. v. Insurance Co. of North America, Okl., 375 P.2d 873 (1962). Insurance contracts are to be liberally construed in favor of object to be accomplished. American Motorist Ins. Co. v. Biggs, Okl., 380 P.2d 950 (1963). A policy of insurance is a contract and should be construed as every other contract, that is, where not ambiguous, according to its terms. An insurance company may limit the risk for which it is responsible. C. P. A. Co. v. Jones, Okl., 263 P.2d 731 (1953).

The decision of the Court of Appeals is revesed. The judgment of the trial court is reversed and the case is remanded with directions to enter judgment for defendant.

DAVISON, C. J., WILLIAMS, V. C. J., and SIMMS and DOOLIN, JJ., concur.

IRWIN, BERRY, HODGES and BARNES, JJ., dissent.

BARNES, Justice (dissenting):

I cannot concur in the majority opinion.

The correctness of the trial court's judgment and the decision of the Court of Appeals affirming it hinges upon the interpretation of the following portion of the insurance policy involved:

"Section II of this Policy does not apply:

"(d) to bodily injury or property damage arising out of business pursuits of an Insured except activities therein which are ordinarily incident to non-business pursuits; * * *."

The majority opinion reverses both of the previous judicial determinations in this case without considering the definitions contained in the policy itself. The policy's definition of "business" is: "trade, profession, or occupation . . . ."

Also, after stating: "Certain rules already established in Oklahoma jurisprudence were used in resolving the issues of this case," the majority opinion fails to recognize some rules of interpretation that are basic in the consideration of this case. These unmentioned rules are:

1. An insurance contract is construed to give effect to all its provisions, if possible, and its terms are accepted in their plain and ordinary sense. Great American Ins. Co. of New York v. O. K. Packing Co., 202 Okl. 231, 211 P.2d 1014 [1949].

2. Where the insurer relies on an exclusionary clause to escape coverage liability, it has the burden of showing that the insured's loss was within the scope of that clause. See General Accident, Fire & Life Assur. Corp. v. Hymes, 77 Okl. 20, 185 P. 1085, 8 A.L.R. 318 [1919].

3. Conditions and provisions of every contract of insurance will be construed against the insurer who proposes and prepares the policy. If the policy is capable of being construed in two ways, that interpretation should be placed upon it that is most favorable to the insured. Continental Casualty Company v. Beaty, Okl., 455 P.2d 684.

4. The policy's words of inclusion are liberally construed in favor of the insured and its words of exclusion are strictly construed against the insurer. Conner v. Trans-America Insurance Company, Okl., 496 P.2d 770.

Definitions of the terms "trade", "profession", and "occupation" may be found in any good dictionary. Webster's Third New International Dictionary is quoted in the following excerpt from Home Insurance Company v. Aurigemma, 45 Misc.2d 875, 257 N.Y.S.2d 980, 985:

"The meaning of the term 'business pursuit' as used by plaintiff in its exclusionary clause must be viewed in the light of the understanding of the ordinary insured, if unambiguous, or, if otherwise, to be construed against the insurer who prepared the form and created the wording.

"Webster's Third New International Dictionary, Unabridged, defines the 'key words' in the subject policy as follows:

" 'Business. a commercial or mercantile activity customarily engaged in as a means of livelihood.'

" 'Pursuit. an activity that one pursues or engages in seriously and continually or frequently as a vocation or profession.'

" 'Trade. the business one practices or the work in which one engages regularly; one's calling: gainful employment: means of livelihood.'

" 'Profession. a calling requiring specialized knowledge and often requiring long and extensive preparation including instructions in skills and methods.'

" 'Occupation. that which principally takes up one's time, thought and energies, especially one's regular business or employment, also whatever one follows as the means of making a livelihood.' "

Mr. Geibe did not consider raising St. Bernard dogs to be his trade, business, or occupation. His sworn application for a homestead exemption for 1971 stated that no part of his property was used commercially. Also, for this property, Geibe never applied for a kennel permit, which would have been required if he kept more than four adult dogs on the premises. On the day Mrs. Wiley was bitten, only three adult St. Bernard dogs and one litter of puppies were there.

It was undisputed that Mr. Geibe held a full-time job as a traveling salesman and earned in excess of $10,000.00 per year at that occupation.

If we apply any of the above-quoted commonly accepted definitions, we find that raising dogs was not policy-holder Geibe's principal calling, vocation or business. The definitions make no distinction on the basis of profit motive, but they emphasize the particular activity on which a person concentrates in earning a livelihood. Certainly, as to Mr. Geibe, raising dogs for sale did not come within that category.

The trial court found that the insurance policy's exclusionary portion did not apply because Geibe's raising and sale of the dogs was a hobby and not his trade, profession or occupation. I think this determination must be upheld for several reasons: First, I think the facts show that Mr. Geibe raised St. Bernard puppies for the fun of it and that profit was an incidental consideration. Second, I think that if there is a fact question, we are bound by the trial court's finding if sustained by any competent evidence. Third, if there is an ambiguity in the insurance policy, about which reasonable minds may differ, in determining whether Geibe's activity in relation to the dogs was a hobby or business pursuit, the issue must be resolved in favor of him as the policy holder and against the writing company. In this connection, see Central National Ins. Co. of Omaha v. Campbell, Okl., 488 P.2d 1228, 1231, in which this Court said:

" * * * As the defendant was responsible for the drafting of the Summary, and as it would have been so easy in performing this task to have used words in it that would have definitely and unequivocally restricted the subject group policy's coverage * * * we will follow the general rule of construing the policy's language most strongly against the insurer [citing authority] * * *."

See also Williams v. Herrera, 83 N.M. 680, 686, 496 P.2d 740, 746, in which the Court said:

"(1) Before the accident occurred, Herrera was building his own home. Whether this should be considered a 'business pursuit,' it is difficult to say. We believe it is ambiguous terminology because the average layman could disagree that in its ordinary meaning, building a home is a business pursuit. We resolve the ambiguity against the insurer and hold it was not a business pursuit."

A fourth reason I think the two previous judicial determinations in this case should be upheld evolves from the portion of Section II(d) excepting from its application

"activities which are ordinarily incident to non-business pursuits; * * *."

While Mrs. Wiley, the plaintiff, was on Geibe's home property to look at the puppies there, the dog which attacked her was not near the puppies, so that, as far as the record shows, plaintiff's complaint that "she was attacked by one of Geibe's dogs" has nothing about it to distinguish it from an attack upon a casual or social visitor by a watchdog, at any residence or home property. Under the circumstances, the dog's presence at that location, and her attack on Mrs. Wiley, can be considered no more than the "ordinary activity" [Security National Insurance Co. v. Sequoyah Marina, U.S.C.A., 10th Cir., 246 F.2d 830, 833] of a dog, with watchdog or protective instincts, confronting an obvious stranger on private property the dog considered her territorial domain or that of her master and mistress. In other words, the dog's presence where she attacked Mrs. Wiley had no more connection with Geibe's raising and selling of dogs than if she had been an electrically-wired fence erected around private premises for personal or family protection to shock would-be trespassers on the premises. In this connection, notice the reasoning in Edwards v. Trahan [La.App.], 168 So.2d 365. But even without any positive conclusion as to this phase of the facts, and if we assume that raising and selling St. Bernard dogs was Geibe's "business pursuit" within the meaning of Section II(d) of the policy, "it is at least as logical to conclude" that the activity which caused Mrs. Wiley's injury "was the type ordinarily incident to a non-business pursuit, as it would be to reach an opposite determination." See State Farm Fire & Cas. Co. v. National Union F. Ins. Co., 87 Ill.App.2d 15, 230 N.E.2d 513, 516. Thus under the rationale of the cited cases, and other included in the Court's "analysis" in Williams v. Herrera, supra, and applying the rules of insurance contract interpretation, I have cited, to the issue of whether or not Mrs. Wiley's injury arose out of "activities . . . ordinarily incident to non-business pursuits," I can only

conclude that it did, and that therefore the injury was within the policy's coverage.

The majority opinion states that the present appeal "is limited in scope to the action in garnishment, a special proceeding," and suggests that the "judgment in the negligence action is not affected except for its enforcement in garnishment under the homeowner policy." But the trouble is that resort to the homeowner policy is a most important part of the fruit of the judgment in the negligence action, so that it is not correct to say that the judgment is not seriously affected by what we here decide. Hence we should not properly deprive the judgment creditor of that to which the trial court's judgment entitled him. The majority opinion provides no reason for doing so.

For the foregoing reasons, I am of the opinion that the judgment of the trial court should be affirmed and that the decision of the Court of Appeals upholding it should not be disturbed by granting certiorari and reversing the trial court. I therefore respectfully dissent to the majority opinion.

I am authorized to announce that Justices IRWIN and HODGES concur in my dissenting views.