2006 OK CIV APP 85

**Wanda BAILEY and Carma Foster, Plaintiffs/Appellants,**

v.

**FARMERS INSURANCE COMPANY, INC., Defendant/Appellee.**

**No. 102,865.**

Court of Civil Appeals of Oklahoma, Division No. 4.

June 6, 2006.

David M. Shear, Oklahoma City, OK, for Plaintiffs/Appellants.

Michael S. Ryan, Brandon P. Wilson, Edmonds, Cole, Hargrave, Givens, Ryan & Woodson, Oklahoma City, OK, for Defendant/Appellee.

Opinion by DOUG GABBARD II, Presiding Judge.

¶ 1 In this breach of contract and "bad faith" action, Plaintiffs, Wanda Bailey and Carma Foster, appeal the trial court's grant of summary judgment in favor of Defendant, Farmers Insurance Company, Inc. (Farmers). Based upon the facts and the law, we affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

¶ 2 Plaintiffs' horse barn was destroyed by fire on December 3, 2003. Plaintiffs had purchased from Farmers a homeowner's insurance policy which covered separate structures, such as the barn and its contents, as well as other expenses incurred by Plaintiffs as the result of a fire. Farmers refused coverage on the grounds that the barn and contents were used in a business and, therefore, were excluded from coverage by the policy.

¶ 3 Plaintiffs filed suit on December 8, 2004, alleging that Farmers' actions constituted breach of contract and breach of the duty of good faith and fair dealing. Farmers

filed an answer generally denying Plaintiffs' allegations and setting forth affirmative defenses.

¶4 In October 2005, Farmers filed separate motions for summary judgment on Plaintiffs' bad faith theory of recovery and breach of contract theory. Farmers' evidentiary material indicated that Plaintiffs used the barn to house horses, tack, washing and drying machines for blankets, veterinary supplies, and many other items related to the care and training of the horses; that Plaintiffs owned approximately 15 horses; that in a taped interview immediately after the fire, Plaintiff Bailey indicated that Plaintiffs used the barn for their "horse business"; that Plaintiffs claimed $52,533 in business deductions on their 2000 federal income tax return (Schedule F), listed their "principal crop or activity" as "Horses/Breeding/Boarding," and listed expenses for feed, veterinary, breeding, medicine, AQHA registration fees, farrier fees, and tags; that Plaintiffs had similar expenses for 2000, 2001, 2002 and 2003; that in 2003 Plaintiffs applied for and received a State Agricultural Exemption Permit, and that such permits are only issued to certain "for profit" farming or ranching businesses under 68 O.S.2001 § 1358; that Plaintiff had registered three colts to increase their sale value, and had attempted to sell two horses during the months immediately preceding the fire; and that Plaintiffs had actually sold one of the horses (Bottoms Up Scarlet) after the fire.

¶5 Plaintiffs filed briefs in opposition. Plaintiffs' evidentiary material indicated that they raised and trained horses as a "hobby," and were not known for "selling horses," but for "collecting them"; that Plaintiffs sold no horse during the five years before the 2003 fire and had only sold the horse in 2004 to raise money for living expenses; that Plaintiffs did not train horses for third parties; that Plaintiffs did not board horses for profit; that Plaintiffs had not bred horses since 2000; that Plaintiffs were not motivated by profit, but only made money "by chance"; that Plaintiffs did not hold themselves out as a business or advertise as same; that Plaintiffs did not maintain separate books or bank accounts with regard to the horse activities;

and that Plaintiffs had virtually no income from horse activities but supported themselves with retirement and Social Security income. Plaintiffs also submitted evidentiary material that Farmers paid a loss on the barn when it collapsed due to snow prior to 2000 and that Plaintiffs' use had not changed since that time.

¶6 On November 16 and December 1, 2005, the trial court granted summary judgment to Farmers on Plaintiffs' claim. Plaintiffs appeal.

## STANDARD OF REVIEW

¶7 Summary judgment is a device used to reach a final judgment where there is no dispute as to any material fact, and where one party is entitled to judgment as a matter of law. *Indiana Nat'l Bank v. Dep't of Human Serv.*, 1993 OK 101, 857 P.2d 53. We review a grant of summary judgment *de novo*, meaning we have independent and non-deferential authority to determine whether the trial court erred in its application of the law. *Young v. Macy*, 2001 OK 4, 21 P.3d 44.

## ANALYSIS

¶8 In determining whether the trial court properly granted summary judgment on the contract claim, the primary issue is whether there was a legitimate dispute that the barn and contents were used for business purposes. Section I, Coverage B of the homeowner's insurance policy provided:

> We do not cover separate structures which are intended for use in business or which are actually used in whole or in part for business purposes.

The policy also defined "business" as "any full or part-time trade, profession or occupation" and "business property" as "property pertaining to or intended for use in business." Furthermore, it covered personal property owned by an insured, on and off the "residence premises."

¶9 In construing insurance contracts, the contract's terms and words, if unambiguous, must be accepted in their plain, ordinary, and popular sense. *Littlefield v. State Farm Fire & Cas. Co.*, 1993 OK 102, 857 P.2d 65; *Penley v. Gulf Ins.Co.*,

1966 OK 84, 414 P.2d 305. Parties to insurance contracts are at liberty to contract for insurance to cover such risks as they see fit and are bound by the terms thereof, and courts will not rewrite the terms. Thus, in construing the language of an insurance policy, we look to the natural and reasonable meaning, fairly construing it to effectuate its purpose, and viewing it "in the light of common sense so as not to bring about an absurd result." *Am. Iron & Mach. Works Co. v. Ins. Co. of No. Am.*, 1962 OK 197, 375 P.2d 873 (syllabus 3).

¶ 10 In determining a contract's natural and reasonable meaning we note that *Black's Law Dictionary* (5th ed.1979), defines "business" as "[e]mployment, occupation, profession, or commercial activity engaged in for gain or livelihood. Activity or enterprise for gain, benefit, advantage or livelihood ... That which habitually busies or occupies or engages the time, attention, labor, and effort of persons as a principal serious concern or interest or for livelihood or profit." The primary elements of this definition appear to be continuity and profit motive. In other words, businesses usually have a degree of continuity and have an ultimate goal of profit.

¶ 11 This is essentially the same conclusion reached by the Oklahoma Supreme Court in *Wiley v. Travelers Insurance Co.*, 1974 OK 147, 534 P.2d 1293, cited by both parties as authority. In that case, as here, the plaintiffs alleged that they were engaged in a hobby, rather than a commercial business activity. The Supreme Court held that a hobby can be a business pursuit when there is a profit motive attached to the activity:

An effort is made to distinguish between a hobby and a business pursuit. A business pursuit is denoted as "what one does' for a living." A hobby is called "what one does for pleasure." We believe this distinction is artificial. One's livelihood may be, and hopefully is, one's greatest pleasure.

Can a hobby be a business pursuit? We believe the addition of a profit motive to an activity makes it a business pursuit. Insurer in its brief says the "addition of profit motive is all that is necessary to make an activity both a hobby and a business pursuit." We agree.

*Id.* at ¶¶ 9–10, 534 P.2d at 1295.

The Court also referred to *Kelley v. United States*, 202 F.2d 838 (10th Cir.1953), and ultimately held that "[p]rofit motive, not actual profit, makes a pursuit a business pursuit." *Wiley* at ¶ 12, 534 P.2d at 1295.

¶ 12 In *Wiley*, the Court found the plaintiffs were engaged in a business because they had renovated their house for the purpose of constructing a dog breeding and kenneling area. They bred, raised, and sold dogs for profit; ran classified ads to sell dogs; erected a large sign to sell dogs; and sold numerous dogs at standard rates of $75 to $300. The evidence in the present case is substantially different. Although Plaintiffs raised horses for a number of years prior to the 2003 fire, there were few ads, few sales, virtually no income, and a substantial dispute as to whether they had any profit motive.

■ ¶ 13 Farmers' strongest evidence of business activity is Bailey's reference to their "horse business," and the fact that Plaintiffs took business deductions on their federal tax returns and applied for and received a state tax exemption permit. However, these facts are not conclusive. Plaintiffs dispute how these facts should be interpreted. They allege that Bailey could not know whether there was a "business" because her medical problems kept her from being actively involved, and that her reference to a "business" was an off-the-cuff remark that did not mean a "commercial business." Plaintiffs also contend that the tax returns and tax permits were merely a utilization of the tax code to their benefit.

■ ¶ 14 While Bailey's statement is relevant and admissible as an admission, it is not conclusive and may be explained. *See State ex rel. Blankenship v. Freeman*, 1968 OK 54, ¶ 77, 440 P.2d 744, 760. Likewise, Plaintiffs' conduct to minimize their taxes is merely one factor that may be examined in determining whether an activity is a business. *See* D. Marchitelli, Annotation, *Construction and Application of 'Business Pursuits' Exclusion Provision in General Liability Policy*, 35 A.L.R. 5th 375 § 11, 1996 WL 568372 (1996);

*U.S. Auto. Ass'n v. Lucas,* 200 Ga.App. 383, 408 S.E.2d 171 (1991); *Millers Mut. Ins. Ass'n v. Pennington,* 888 S.W.2d 406 (Mo.Ct. App.1994). Clearly, the evidentiary material presented in this case establishes that a substantial controversy exists which should be determined by the trier of fact. For these reasons, the trial court erred in granting summary judgment on Plaintiffs' breach of contract theory

¶ 15 Plaintiffs also argue that the trial court erred in granting summary judgment on their theory of recovery for bad faith, more precisely referred to as the breach of the duty of good faith and fair dealing. *See Badillo v. Mid Century Ins. Co.,* 2005 OK 48, 121 P.3d 1080. The elements of such a theory are: 1) the plaintiff's loss was covered under the insurance policy issued by the insurer; 2) the insurer's refusal to pay the claim in full was unreasonable under the circumstances because it had no reasonable basis for the refusal, it did not perform a proper investigation, or it did not evaluate the results of the investigation properly; 3) the insurer did not deal fairly and act in good faith with the plaintiff; and 4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the injury sustained by the plaintiff. *See* OUJI–Civ No. 22.2 (2d ed.); *Duensing v. State Farm Fire & Cas. Co.,* 2006 OK CIV APP 15, 131 P.3d 127.

¶ 16 In most bad faith cases, "the decisive question is whether the insurer had a good faith belief, at the time its performance was requested, that it had a *justifiable* reason for withholding payment under the policy." *Newport v. USAA,* 2000 OK 59, ¶ 10, 11 P.3d 190, 195 (emphasis added; internal quotation marks omitted). If there is a legitimate dispute concerning coverage or no conclusive precedential legal authority on an issue, withholding payment is not unreasonable or in bad faith. *Skinner v. John Deere Ins. Co.,* 2000 OK 18, 998 P.2d 1219. However, in *Newport,* the Supreme Court noted:

> If there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always

a question to be determined by the trier of fact by a consideration of the circumstances in each case.

2000 OK 59 at ¶ 11, 11 P.3d at 195, *quoting McCorkle v. Great Atlantic Ins. Co.,* 1981 OK 128, 637 P.2d 583.

¶ 17 In this case, Farmers had a good faith belief that there was a justifiable reason for withholding payment under the policy. Plaintiffs submitted evidentiary material suggesting that Farmers previously paid Plaintiffs for a claim on the same barn, under a similar policy, while they were engaged in the same activities. Plaintiffs imply that, because Farmers had essentially the same evidence as it did when it paid the earlier claim, its withholding payment on the present claim is unreasonable and demonstrates a lack of good faith and fair dealing. Farmers responds that it has additional evidence which was not available at the time of the earlier claim. It refers again to Bailey's statement, the federal tax returns, and the state tax exemption.

¶ 18 Even if no additional evidence existed, the fact that Farmers paid an earlier, similar claim, without more, does not demonstrate bad faith or a breach of good faith. An insurer may withhold payment and litigate any claim as to which the insurer has a reasonable defense. *Manis v. Hartford Fire Ins. Co.,* 1984 OK 25, 681 P.2d 760. An insurer's failure to dispute a claim when it has the opportunity to do so, does not usually foreclose its right to dispute a later, similar claim, nor does such conduct constitute a breach of its duty of good faith. Insurers are free to make legitimate business decisions (and mistakes) regarding payment, as long as they act reasonably and deal fairly and in good faith with their insureds.

¶ 19 Indisputably, Farmers had additional information that it did not have at the time of the earlier claim. Moreover, it has presented extensive correspondence between its attorney and Plaintiffs' attorney discussing the factual and legal reasons for withholding payment. The record presents a clear and compelling demonstration of how to deal fairly and in good faith with an insured. For these reasons, we find as a matter of law that

Farmers has acted reasonably under the circumstances in its dealings with Plaintiffs. The trial court properly granted summary judgment to Farmers on Plaintiffs' bad faith theory of liability.

## CONCLUSION

¶ 20 Accordingly, we find that summary judgment should not have been granted on the breach of contract theory of liability, and that judgment is reversed and remanded for further proceedings. However, we find that summary judgment was properly granted to Farmers on Plaintiffs' breach of good faith and fair dealing theory, and that judgment is affirmed.

¶ 21 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

REIF, J., concurs, RAPP, V.C.J., concurs in part and dissents in part.

RAPP, V.C.J., concurring in part and dissenting in part:

¶ 1 I concur as to the Majority's holding on the breach of contract claim, but dissent relative to the Majority's holding on the bad faith claim. I would hold there is sufficient evidence upon which reasonable men could disagree concerning the bad faith claim and, therefore, this is an issue for the trier of fact and not subject to summary judgment. I do agree that an insurer has a right to dispute any claim without fear of bad faith when the insurer's dispute is made in good faith and upon solid evidence, and not upon the shifting sands foundation on which the refusal here was based. Accordingly, I would hold the trial court erred in its grant of summary judgment in the bad faith matter.