427 So.2d 596 (1983)
Elizabeth BURGLASS
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY.
No. 82-CA-17.
Court of Appeal of Louisiana, Fifth Circuit.
February 7, 1983.
*597 Paul B. Deal, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for defendant-appellant.
Alan P. Dussouy, Anthony C. D'Antonio, New Orleans, for plaintiff-appellee.
Before KLIEBERT, BOWES and GAUDIN, JJ.
KLIEBERT, Judge.
Ms. Elizabeth Burglass (hereafter the victim), plaintiff, brought a suit in tort to recover damages for injuries sustained when a dog bit her. The suit was brought against United States Fidelity and Guaranty (USF & G), who issued a homeowners insurance policy on the premises bearing Municipal No. 303 East William David Parkway in Jefferson Parish, the premises at which the dog bite occurred. The trial judge awarded damages of $15,500.00, of which $500.00 was for medical expenses under the medical payment provision of the policy and $15,000.00 was under the liability provision of the policy. USF & G brought this suspensive appeal, and on this appeal, urges lack of coverage under the policy for the particular incident involved here and, alternatively, victim fault as an affirmative defense. The victim answered the appeal seeking an increase in the award and for penalties and attorney's fees for non-payment of medical expenses under the medical pay provisions of the policy. We affirm the decision of the trial court.
The victim's mother and father were divorced in about 1967. The community of acquets and gains formerly existing between them has not been partitioned. The premises bearing Municipal No. 303 East William David Parkway was the former community home of the victim's mother and father. Following the divorce, the victim and her mother, Mrs. Patricia Adams Burglass, and other children of the marriage continued to live in the house. The victim's father, Harry Burglass, had remarried and lived away from the premises. Since there was no partition of the community of acquets and gains, the victim's mother and father were co-owners of the house. Nevertheless, the policy was issued with Harry Burglass as the only named insured in the policy. USF & G had carried the *598 coverage on the premises since prior to the divorce. The policy was in full force at the time of the incident sued upon herein.
Due to a disagreement with her mother, the victim moved out of the house several months prior to January 17, 1980. On that day, she called her mother who let her in the house to obtain some of her personal belongings. After giving the victim access to the house, her mother left. Prior to entering the house, the victim had purchased a sandwich which she brought into the house. She placed the sandwich on the kitchen table when she heard the front doorbell ring. A neighbor was returning the family dog, a Dalmatian named "Sprinkle", which had been running loose in the neighborhood. The dog entered the house and proceeded to the kitchen. When the victim re-entered the kitchen, she found the dog eating the sandwich. She tried to retrieve the sandwich from the dog. In so doing, she bent her head downwards, almost even with the dog's mouth, while pulling on the sandwich and shouting to the dog to turn loose. The dog bit her on the face. Elizabeth ran to the front door, called on the neighbor, who had returned the dog, for assistance and was brought to the hospital by the neighbor. She has a residual scar extending approximately two and one-half inches diagonally from her lip to her chin on the left side of her face. The scar is noticeable, permanent, and in a minor respect, somewhat disfiguring.
We consider first USF & G's policy defense. USF & G contends there is no coverage under the policy because the dog was not owned by Harry Burglass, the only named insured, and the owners of the dog, Mrs. Patricia Burglass and/or her children, were not insured under the policy because they were not residents of the named insured's household. We do not agree.
Section III, Coverage E of the policy provides in pertinent part as follows:
"The Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence ..."
Paragraph 8 a. of the general conditions in the policy defines the insured under the policy as follows:
"When used in this policy the following definitions apply:
a. "Insured" means
(1) the Named Insured stated in the Declarations of this policy;
(2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any Insured; and
(3) under Coverage EPersonal Liability and Coverage FMedical Payments to Others:
(a) with respect to animals or watercraft to which this insurance applies, owned by any Insured, any person or organization legally responsible therefor, except a person or organization using or having custody or possession of any such animal or watercraft in the course of his business or without the permission of the owner; and
(b) with respect to any vehicle to which this insurance applies, any employee of any Insured while engaged in the employment of the Insured."
and paragraph 8 b. defines the insured premises as:
"b. insured premises means
(1) the residence premises described in the Declarations of this policy;"
Mrs. Patricia Burglass was a co-owner of the insured premises and had resided in the insured premises with her family since prior to the divorce. At the time of the incident, therefore, she had possession, custody and control of the insured premises. At the time of the accident, the dog "Sprinkle" was and had been the family pet for some six or seven years and stayed on the premises with the family occupying the insured premises. If not actually the owner of the dog, Mrs. Burglass was the person with the possession, custody and control of the dog and, as such, one of the persons legally responsible for the dog's actions.
*599 The policy, by its designation and name, i.e., "Homeowners", is sold and intended to provide insurance coverage to the owners and resident members of the owner's household occupying the insured premises. Apparently, through error of the person preparing the policy, Mrs. Burglass was not specifically named as an insured. Further, although Harry Burglass did not live in the insured premises at the time of the incident sued on, the people residing in the insured premises are members of his family and part of his original household which he had been required to maintain and support.
We hold, therefore, that under the circumstances presented here, there was coverage under the policy because Mrs. Burglass was an insured under the policy. The failure of the insurance agent to name both Mr. and Mrs. Burglass as named insureds is chargeable to the insurance company. Insurance policies are to be construed in their ordinary and popular sense with any ambiguities construed against the insurer which prepared the policy and in favor of coverage. Insurance Company of North America v. Solari Parking, 370 So.2d 503 (La.1979).
We now consider the victim's fault. The trial judge rejected USF & G's argument of victim fault because he considered this a strict liability case. Although a strict liability case, the owners can exculpate themselves from liability by showing the harm was caused by the victim's fault or by the fault of a third person for whom he is not responsible or by a fortuitous event. Holland v. Buckley, 305 So.2d 113 (La.1974); Martinez v. Modenbach, 396 So.2d 471 (La. App. 4th Cir.1981). Therefore, the trial judge's reasons for rejecting the argument were incorrect. However, we believe his results were right. The victim fault urged by USF & G was the victim's efforts to remove food from the dog's mouth by wiggling the sandwich and shouting to the dog while lowering her face to the dog's level. The plaintiff and the dog grew up together and the dog had never shown dangerous propensities when repelled from food. In fact, the witnesses described the dog as gentle, docile and lovable. Under those circumstances, we cannot say her manner of reacting when she saw the dog was the cause of her injury, particularly where, as here, she repelled the dog from food on occasions in the past without sustaining injury.
USF & G additionally argues that for plaintiff to recover under the medical pay provisions of the policy she had to have her father's permission to go on the insured premises and that medical expenses incurred while she resided in the insured premises are not covered by the policy. The arguments are without merit. The plaintiff had the permission of her mother, a co-owner of the property, to go upon the property. Further, exclusion of the medical pay provision of the policy contained under coverage F b(2) and providing that medical pay coverage does not apply to "any person,..." has to be read with the obvious intent of the policy being to exclude medical payments to those who reside in the premises at the time of the injury. Since plaintiff did not reside in the insured premises at the time she sustained the dog bite, the exclusion does not apply.
In plaintiff's answer to the appeal she seeks an increase in the general damages awarded as well as an award for penalties and attorney fees for non-payment of medical expenses. Before a court of appeal can disturb an award made by a trial court, the record must clearly reveal that the trier of facts abused his discretion in making his award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Reck v. Stevens, 373 So.2d 498 (La.1979); Perniciaro v. Brinch, 384 So.2d 392 (La.1980). The cases cited by Elizabeth to support her demand for an increase are easily distinguishable by the fact that the injuries and scarring are substantially greater than hers. Here, the plaintiff's scar is noticeable and permanent but does not constitute a major disfigurement and, with time, is likely to become less noticeable. For that reason, we will not disturb the trial judge's ruling.
The victim also seeks attorney fees and penalties from USF & G due to their non-payment of the medical expenses of $500.00 (the maximum amount provided by the policy). An insurer's liability to pay a *600 penalty of attorney fees under the provisions of R.S. 22:658 depends on whether the denial of coverage is arbitrary, capricious and without probable cause. It is true, as contended by the plaintiff, that the trial judge found the insurer's refusal to honor the medical expenses was arbitrary and capricious. Therefore, on termination of the hearing, he stated he would, but failed to provide penalties and attorney fees in his judgment. It does not follow, however, that this was an oversight by the trial judge. After further reflection, the trial judge may well have changed his mind. This is particularly so here, for the trial judge had an opportunity to reconsider his judgment when he denied the motion for a new trial.
USF & G's argument as to the medical payment was not limited solely to the interpretation of the medical payment provision. Rather, its first and principal argument was that the policy did not apply to the incident in question because the responsible party for the dog was not an insured in the policy. Although we do not agree with their contentions, we cannot say USF & G was arbitrary and capricious in urging the policy defense.
Accordingly, the judgment of the trial court is affirmed. The appellant to pay all costs of these proceedings.
AFFIRMED.