Christina MALIK, Plaintiff-Appellant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Matthew J. Herman and Patricia Herman,
Defendants-Respondents.

Court of Appeals

*No. 00–1129. Submitted on briefs January 5, 2001.—Decided
March 22, 2001.*

## 2001 WI App 82

(Also reported in 625 N.W.2d 640.)

28

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *M. Nicol Padway, Esq.* of *Padway & Padway, Ltd.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Maile E. Buell* and *Agatha K. Kresa* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

On behalf of the defendant-respondent, American Family Mut. Ins. Co., the cause was submitted on the brief of *Michael J. Wirth* of *Peterson, Johnson & Murray* of Milwaukee.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

¶ 1.   VERGERONT, J.   Christina Malik was bitten by a dog, owned by Matthew and Patricia Herman, which she was caring for while the Hermans were on vacation. She appeals the summary judgment dismissing American Family Insurance Company because, the trial court concluded, there was no coverage under the Hermans' homeowners insurance policy. Malik also appeals the summary judgment dismissing the claim against the Hermans under WIS. STAT. § 174.02(1) (1999–2000),[1] the dog bite statute, and the

---

[1] WISCONSIN STAT. § 174.02 provides in part:

Owner's liability for damage caused by dog; penalties; court order to kill a dog.

(1)   LIABILITY FOR INJURY. (a) Without notice. Subject to s. 895.045 and except as provided in s. 895.57(4), the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property.

(b)   After notice. Subject to s. 895.045 and except as provided in s. 895.57(4), the owner of a dog is liable for 2 times the full amount of damages caused by the dog injuring or causing injury to a person, domestic animal or property if the owner was notified or knew that the dog previously injured or caused injury to a person, domestic animal or property.

(2)   PENALTIES IMPOSED ON OWNER OF DOG CAUSING DAMAGE. (a) Without notice. The owner of a dog shall forfeit not less than $50 nor more than $500 if the dog injures or causes injury to a person, domestic animal, property, deer, game birds or the nests or eggs of game birds.

(b)   After notice. The owner of a dog shall forfeit not less than $200 nor more than $1,000 if the dog injures or causes injury to a person, domestic animal, property, deer, game birds or the nests or eggs of game birds, if the owner was notified or knew that the dog previously injured or caused injury to a person, domestic animal, property, deer, game birds or the nests or eggs of game birds.

(c)   Penalties in addition to liability for damages. The penalties in this subsection are in addition to any other liability imposed on the owner of a dog.

30

court's dismissal of her claim for double damages under § 174.02(1)(b) for the Hermans' alleged common law negligence.

¶ 2.   We conclude the homeowners policy does not provide coverage for Malik's claims against the Hermans because at the time she was injured she was an insured under the policy, and the intra-insured exclusion therefore applied. We also conclude Malik was a keeper of a dog and therefore an owner under WIS. STAT. §§ 174.02(1) and 174.001(5), and accordingly she may not recover under the statute, notwithstanding that she has alleged the Hermans are negligent. Finally, we conclude that because Malik may not recover under the statute, she may not recover double damages under § 174.02(1)(b) on her common law negligence claim. We therefore affirm.

## BACKGROUND

¶ 3.   For purposes of this appeal, the facts are not in dispute. The Hermans and Malik were friends. The Hermans asked Malik to care for their dog, Corky, a springer spaniel, while they were on a one-week vacation, and Malik agreed. Malik did so as a favor and did not receive any compensation. Malik brought the dog to her house. Corky had been at Malik's house three nights when Corky bit Malik on her left hand. Humane Society employees removed Corky from Malik's home after the incident.

¶ 4.   At the time of the incident, the Hermans had in effect a homeowners insurance policy issued by American Family. Malik's complaint alleged the Hermans were negligent in various ways, that under

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

WIS. STAT. § 174.02 they were strictly liable to her for double her damages, and that their homeowners policy covered their liability.

¶ 5. American Family and the Hermans both moved for summary judgment. American Family contended there was no coverage under the policy because Malik was an insured under the policy and the policy excluded coverage for bodily injury to an insured. The Hermans contended they were not liable to Malik under WIS. STAT. § 174.02 because at the time of the incident she was a keeper of the dog within the meaning of that statute. They also contended they were not negligent because they were not aware, nor in the exercise of reasonable care should they have been aware, that Corky possessed vicious or mischievous propensities to injure others.

¶ 6. The trial court agreed with American Family that its policy did not provide coverage for any liability the Hermans might have to Malik, and it dismissed the insurer. The court denied the Hermans' motion with respect to the negligence claim, allowing Malik to pursue that claim; but the court granted their motion with respect to the statutory claim and dismissed it. Relying on *Armstrong v. Milwaukee Mut. Ins. Co.*, 202 Wis. 2d 258, 549 N.W.2d 723 (1996), the court concluded that because Malik was a keeper and therefore an owner within the meaning of the statute, Malik could not maintain an action against the Hermans. The court also ruled that double damages under WIS. STAT. § 174.02(1)(b) were available only for a violation of the statute and not for common law negligence.

¶ 7. On appeal, Malik challenges the dismissal of American Family, the dismissal of the statutory claim against the Hermans, and the court's ruling that

double damages were not available under WIS. STAT. § 174.02(1)(b) for her common law negligence claim.

## DISCUSSION

¶ 8.   We review a trial court's decision to grant summary judgment de novo, applying the same methodology as the trial court. *Fifer v. Dix*, 2000 WI App 66, ¶ 5, 234 Wis. 2d 117, 608 N.W.2d 740. Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

*Homeowners Insurance Coverage*

¶ 9.   The Hermans' homeowners insurance policy provides:

5.  **Insured**
a.   **Insured** means **you** and, if residents of your household:
(1)   **your** relatives; and
(2) any other person under the age of 21 in **your** care or in the care of **your** resident relatives.
b.   Under Personal Liability and Medical Expense Coverages, **insured** also means:
(1)   any person or organization legally responsible for a watercraft or animal owned by any person included in paragraph a. to which Section II Coverages apply. This does not include a person or organization using or having custody of the watercraft or animal in the course of any **business** or without **your** specific permission.
. . . .

## LIABILITY COVERAGES — SECTION II

**COVERAGE D — PERSONAL LIABILITY COVERAGE. We** will pay, up to **our limit**, com-

pensatory damages for which any **insured** is legally liable because of **bodily injury** or **property damage** caused by an **occurrence** ["an accident, including exposure to conditions, which results during the policy period result in **bodily injury** or **property damage**"] covered by this policy.

. . . .

**COVERAGE E — MEDICAL EXPENSE COVERAGE. We** will pay the **medical expenses** which are incurred or medically ascertained within three years from the date of an accident causing **bodily injury** covered by this policy. This coverage applies only:

. . . .

2. to a person away from the **insured premises** if the **bodily injury**:

. . . .

d. is caused by an animal owned by or in the care of any **insured**;

. . . .

### EXCLUSIONS — SECTION II

. . . .

11. **Intra-insured Suits. We** will not cover **bodily injury** to any **insured**.

■■■■■

¶ 10. The interpretation of an insurance contract is a question of law, which we review de novo. *Danbeck v. American Family Mut. Ins. Co.*, 2000 WI App 26, ¶ 5, 232 Wis. 2d 417, 605 N.W.2d 925, *review granted*, 234 Wis. 2d 175, 612 N.W.2d 732 (Wis. Apr. 28, 2000) (No. 99–1142). We construe the words in an insurance contract as a reasonable person in the position of an insured would understand them. *Id.* at ¶ 6. A word or phrase in an insurance contract is ambiguous if it is susceptible to more than one reasonable construction,

and whatever ambiguity exists is resolved against the insurer as the drafter. *Id.* However, when the terms of a policy are plain on their face, we may not rewrite them. *Id.*

¶ 11.  Malik contends the trial court erred in concluding she was an "insured" under the plain language of the policy and therefore was excluded under the intra-insured exclusion. Malik's position is that there is ambiguity in the policy language, so it must be construed against the insurer; if it is not so construed, she asserts, the intra-insured exclusion results in illusory coverage, which is against public policy.

¶ 12.  According to Malik, a reasonable insured would understand the Hermans are insureds under 5(a) of the insurance policy and that 5(b)(1) expands the definition of "insured" so that if a person who is legally responsible for the Hermans' dog becomes liable to a third person, the person responsible for the dog, as well as the Hermans, is covered under the policy. A reasonable insured would not expect, Malik continues, that the expanded definition of "insured" in 5(b)(1) reduces the personal liability and medical expense coverage available for the Hermans' liability for injury caused by the dog they own.

¶ 13.  The problem with Malik's reading of the insurance policy is that it does not take into account the intra-insured exclusion. That exclusion uses the term "insured," which is in bold type, indicating it has the meaning defined in the policy,[2] and, Malik does not contend she is not an insured under paragraph (b)(1) of that definition.

---

[2] At the beginning of the "Definition" section, the policy provides: "The following words in this policy have defined meanings. They will be printed in bold type." The term "insured" is one of the definitions in this section.

35

¶ 14.   Instead of focusing on the language of the intra-insured exclusion, Malik focuses on the case law that has described the purpose of exclusions for bodily injury to an insured, when "insured" is defined to include certain household residents. In *Shannon v. Shannon*, 150 Wis. 2d 434, 456, 442 N.W.2d 25 (1989), the court held that exclusion was not against public policy because it served the legitimate purpose of protecting insurers from situations where the insured, because of close family ties to the injured party, might not be cooperative with the insurance company's administration and defense of the claim. *See also Whirlpool Corp. v. Ziebert*, 197 Wis. 2d 144, 149, 539 N.W.2d 883 (1995). Malik contrasts the situation in this case because she is not a member of the Hermans' family or resident of their household and, therefore, she contends, the rationale that was the basis for the exclusion considered in *Shannon* and *Whirlpool* is not furthered by applying the exclusion to her.

¶ 15.   In articulating the purpose of the exclusions in *Shannon* and *Whirlpool*, the court did not suggest it would be against public policy to have an exclusion that was broader in scope than suits by family members 'or residents of the insured's household. Therefore, those cases do not shed any light on the proper construction of the intra-insured exclusion in this case.

¶ 16.   Applying the rules of construction of insurance contracts, we conclude that at the time of the incident Malik was an "insured" under the plain language of the policy definition for purposes of personal liability and medical expenses coverage because she was "legally responsible . . . for a[n] animal owned by [the Hermans]" and she had custody of the animal "not in the course of any business" and "with [the Hermans']

36

specific permission." Under the plain language of the intra-insured exclusion, there is no coverage under this policy for her suit against the Hermans to recover for bodily injury.

¶ 17. We do not agree with Malik that if we construe the intra-insured exclusion to include persons who are not members of the Hermans' family or residents of their household, coverage is "illusory" and therefore against public policy. Malik relies on this argument in *Meyer v. Classified Ins. Co.*, 192 Wis. 2d 463, 531 N.W.2d 416 (Ct. App. 1995), and *Ermenc v. American Family Mut. Ins. Co.*, 221 Wis. 2d 478, 585 N.W.2d 679 (Ct. App. 1998), but we conclude neither case supports her position.

¶ 18. In *Meyer*, we held that even though the definition of an underinsured motor (UIM) vehicle in a UIM policy was "not technically ambiguous," given that definition the insured could never recover under the policy. *Meyer*, 192 Wis. 2d at 467–68. Coverage was therefore illusory, we concluded, and violated public policy, which disfavors illusory coverage. *Id.* at 468–69.[3] Essential to our holding in *Meyer* was the fact

[3] More recently in *Sukala v. Heritage Mut. Ins. Co*, 2000 WI App 266, ¶¶ 15–18, 240 Wis. 2d 65, 622 N.W.2d 457, we considered the effect of the supreme court's decision in *Dowhower v. West Bend Mut. Ins. Co.*, 2000 WI 73, 236 Wis. 2d 113, 613 N.W.2d 557, on the line of cases, including *Meyer v. Classified Ins.*, 192 Wis. 2d 463, 531 N.W.2d 416 (Ct. App. 1995), which hold that certain UIM policy provisions rendered coverage illusory and against public policy. We held in *Sukala* that under *Dowhower* a reducing clause in a UIM policy that complied with the recently enacted WIS. STAT. § 632.32(5)(i) did not render the policy illusory; we further held that once we concluded the UIM provision was not ambiguous, our inquiry ended. *Sukala*, 2000 WI App 266 at ¶ 20. We need not decide what, if anything, remains of our holding in *Meyer* after *Dowhower* and *Sukala*,

that the insured who had paid a premium for UIM coverage, would never receive *any* coverage. *Id.* at 468.[4] That is not true in this case. The unambiguous policy language excludes liability coverage for the Hermans in particular situations, but does not even approach a situation where the Hermans are provided no liability coverage in exchange for the premium they pay.

¶ 19.   In *Ermenc*, we rejected the insurer's proposed interpretation of a pre-existing condition exclusion in a health insurance policy, concluding it was unreasonable because it would mean any prior symptom not inconsistent with the ultimate diagnosis would provide a basis for denial of coverage. *Ermenc,* 221 Wis. 2d at 486. This expansive definition of "pre-existing condition," we held, would make denial of coverage "so easy as to make the insurance contract meaningless"; that result, we stated, relying on *Meyer,* was one we should avoid. *Id.* In contrast, in this case, applying the plain language of the definition of "insured" together with the intra-insured exclusion does not result in an unreasonable interpretation or make the insurance contract meaningless. Rather, the contract simply does not provide liability coverage for

because even if *Meyer* were still good law, for the reason we explain above, it does not support an argument that there is illusory coverage under the Hermans' policy.

[4] *Meyer* relied upon *Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 500 N.W.2d 354 (Ct. App. 1993), for this determination. We have since questioned whether the factual underpinning for *Hoglund* is correct. *Taylor v. Greatway Ins. Co.*, 2000 WI App 64, ¶¶ 30–35, 233 Wis. 2d 703, 608 N.W.2d 722, *review granted,* 237 Wis. 2d 251, 616 N.W.2d 114 (Wis. May 23, 2000) (No. 99–1329).

the Hermans in certain clearly defined situations, and this suit by Malik is one of those.

¶ 20.   Based on the undisputed facts, Malik was legally responsible for an animal owned by the Hermans at the time she was injured, and the animal was in her custody not in the course of business and with the Hermans' specific permission. She was therefore an insured under the definition in 5(b)(1) for purposes of personal liability and medical payment expenses. Accordingly, under the plain terms of the intra-insured exclusion, the policy does not provide coverage to the Hermans for any liability they may have to Malik for those injuries.

*Strict Liability Under* WIS. STAT. § 174.02

¶ 21.   Malik contends the trial court erred in interpreting WIS. STAT. § 174.02 to exclude a claim by the keeper of a dog against the legal owner of the dog, when the owner is, or is alleged to be, negligent. According to Malik, *Armstrong* permits a claim in this circumstance, and the trial court erred in reading *Armstrong* to preclude the claim.

¶ 22.   Our review of the trial court's construction of the statute is de novo. *Armstrong*, 202 Wis. 2d at 264. The goal of statutory interpretation is to ascertain the intent of the legislature, and to discern this intent we look first to the plain language of the statute. *See id.* at 268. If the plain language of the statute is clear, we look no further and simply apply the statute to the facts and circumstances before us. *See id.*

¶ 23.   WISCONSIN STAT. § 174.02(1)(a) provides that "the owner of a dog is liable for the full amount of damages caused by the dog injuring or causing injury

to a person, domestic animal or property." This section has been interpreted to impose strict liability on a dog owner, subject only to the defense of comparative negligence. *Fifer*, 2000 WI App 66 at ¶ 7. " 'Owner' includes any person who owns, harbors or keeps a dog." WIS. STAT. § 174.001(5). In *Armstrong*, the court held that a keeper, and therefore an owner under the statute, need not be the legal owner of the dog, but must exercise some measure of custody, care, or control over the dog. *Armstrong*, 202 Wis. 2d at 266–67.

¶ 24. Malik does not contend she was not a keeper and, therefore, an owner under the statute at the time the Hermans' dog bit her. Rather, she relies on this statement in *Armstrong*: "We hold that when the legal owners of a dog are not negligent and are not exercising control over their dog, a person acting in the capacity of the dog's keeper cannot collect damages under WIS. STAT. § 174.02." *Armstrong*, 202 Wis. 2d at 268. Malik reads this statement to suggest that when the keeper proves the legal owner is negligent, the keeper may collect damages under the statute. However, when we read this statement in context, we conclude that the reference to the legal owners as "non-negligent" is a description of the facts in that case rather than a necessary condition for precluding recovery by a keeper who is not the legal owner.

¶ 25. The above-quoted sentence is followed by the court's reasoning:

> We hold that when the legal owners of a dog are not negligent and are not exercising control over their dog, a person acting in the capacity as the dog's keeper cannot collect damages under WIS. STAT. § 174.02. Armstrong argues that whether or not she is a keeper is irrelevant to this case. Under the argument advanced by Armstrong, a keeper

would be liable under WIS. STAT. § 174.02 only when a third party non-owner was injured. However, a legal owner would be liable to all injured parties, including other statutory owners such as a keeper.

We reject this position. There is no evidence that the legislature intended to treat keepers or harborers differently than legal owners. We conclude that the purpose of the statute is to protect those people who are not in a position to control the dog, and not to protect those persons who are statutorily defined as owners. An owner injured while in control of the dog may not use the statute to hold another owner liable.[8]

---

[8] Of course, when there is negligence, there is nothing in this opinion which should be interpreted to prevent a keeper from pursuing a common-law negligence claim against another owner.

*Armstrong*, 202 Wis. 2d at 268.

¶ 26.   Neither the argument made by *Armstrong*—that her status as keeper was irrelevant—nor the court's reasons for rejecting it depends upon the non-negligence of the legal owner. The court's rationale—that the legislature's purpose is to protect those people who are not in a position to control the dog, not to protect those persons who are statutorily defined as owners—applies whether or not the legal owner is negligent. In addition, footnote 8 explains what happens when the legal owner is negligent: the keeper has a claim for common law negligence against the owner. We agree with the trial court that the reasoning of *Armstrong* compels the conclusion that Malik, as a keeper, may not recover from the Hermans under the statute.

¶ 27.   We do not agree with Malik that this court's application of *Armstrong* in two subsequent

41

cases—*Fifer* and *Fire Ins. Exch. v. Cincinnati Ins. Co.*, 2000 WI App 82, 234 Wis. 2d 314, 610 N.W.2d 98—supports her reading of *Armstrong*. In *Fifer*, we reviewed a trial court decision that the legal owner of a dog who was not exercising control over the dog when it injured a third person could not be liable under the statute. *Fifer*, 2000 WI App 66 at ¶ 13. We reversed, rejecting the legal owner's argument that this result flowed from *Armstrong* and stating: ". . . *Armstrong* created only a very narrow exception to the strict liability provision of § 174.02(1), an exception that precludes only the imposition of liability under the statute on one 'owner' of a dog for injuries incurred by another 'owner' of the dog." *Fifer*, 2000 WI App 66 at ¶ 10. Our statement that the exception to liability in *Armstrong* is "narrow" refers to *Armstrong's* focus on injury to an owner rather than on injury to any person. Our statement does not indicate a recognition that the *Armstrong* exception applies only if the legal owner is non-negligent; indeed our summary of *Armstrong's* exception does not contain such a limitation.

¶ 28.   In *Fire Ins. Exch.*, we reviewed a trial court's dismissal on summary judgment of claims by a twelve-year-old boy who was volunteering at a county humane society when a dog bit him. The trial court decided the boy was a keeper and, therefore, under *Armstrong* could not recover under the statute. The trial court also dismissed his claim of negligence. We concluded that, if the humane society had violated the child labor laws, then as a matter of law the boy would not be a keeper under WIS. STAT. § 174.02; but, even if the humane society had not violated the child labor laws, the record was insufficient for us to rule as a matter of law that the boy was a keeper. *Fire Ins. Exch.*, 2000 WI App 82 at ¶¶ 14–15. For this and other rea-

sons, we reversed the grant of summary judgment and remanded. *Id.* at ¶ 30.

¶ 29.   In *Fire Ins. Exch.* we quoted the statement from *Armstrong* on which Malik relies, *id.*, at ¶ 13, but nothing in our decision indicates that if the boy were determined to be a keeper, he could recover under the statute because the complaint alleged that both the humane society and the dog's legal owners were negligent. Indeed, we specifically stated:

> "[Since the humane society and the legal owners are 'owners' under the statute], both may be strictly liable under the statute, so long as [the boy] is not also found to be a keeper. Both may avoid *strict liability*, but not liability based on negligence,[7] if the circuit court determines that [the boy] is a keeper because *Armstrong* holds that a keeper may not sue another owner/keeper under WIS. STAT. § 174.02."

---

[7]   We emphasize that even if the circuit court determines that [the boy] is a keeper, it was still error for the circuit court to dismiss this case. *Armstrong* demonstrates that although a keeper will be barred from bringing a claim of strict liability against another owner under the statute, that keeper will not be barred from bringing a claim of *negligence* against another owner or keeper.

*Fire Ins. Exch.*, 2000 WI App 82 at ¶ 18 (footnote added). Rather than supporting Malik's position, *Fire Ins. Exch.* shows we have interpreted *Armstrong* to preclude a keeper from asserting a claim under the statute against the legal owner, even if the legal owner is negligent.

43

*Application of* WIS. STAT. § 174.02(1)(b) *(Double Damages) to Common Law Negligence Claim*

¶ 30.   Malik contends the trial court erred in interpreting WIS. STAT. § 174.02(1)(b) to permit recovery of double damages only for a violation of the statute and not for common law negligence. She contends that sound policy, common sense, and the legislative history of the statute support recovery of double damages on a claim for common law negligence.

■

¶ 31.   Malik's interpretation of WIS. STAT. § 174.02(1) is inconsistent with *Armstrong. Armstrong* held that an owner in control of the dog may not sue under the statute to hold another owner liable, although the owner in control may bring a claim for common law negligence. *Armstrong*, 202 Wis. 2d at 268. If an owner in control may not hold another owner liable under the statute, we do not see how that owner can recover damages under the statute, either the damages caused by an injury when the owner was not notified or did not know the dog previously caused injury, as provided for in § 174.02(1)(a), or double damages when the owner did have notice, as provided in § 174.02(1)(b). The trial court correctly ruled that, since Malik's claim under § 174.02 was dismissed, she could not recover double damages under § 174.02(1)(b) even if she prevailed on the remaining negligence claim.

*By the Court.*—Judgment affirmed.