2005 OK CIV APP 21

**UNITED SERVICES AUTOMOBILE ASSOCIATION, Plaintiff/Appellant, Counter–Appellee,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, Defendant/Appellee, Counter–Appellant.**

**No. 101,240.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 10, 2004.

Certiorari Denied Feb. 28, 2005.

Michael L. Noland, Noland, Mills & Upton, P.C., Oklahoma City, For Plaintiff/Appellant.

Douglas J. Shelton, M. Daniel Weitman, Shelton Law Firm, Oklahoma City, For Defendant/Appellee.

HANSEN, J.

¶1 In June 1999, Peter Bradford [Peter] was on the property of his son, Tim Bradford [Tim] and daughter-in-law, Tamara Smith [Tamara]. He arrived there to assist his wife in babysitting their grandchild. He parked his car in the drive outside of the fenced yard. After spending some time in the house, Peter went outside, opened the gate to the yard, and began pulling his car into the gated area of the yard. While he was entering the yard, Tamara's horse escaped and was involved in a collision with Ms. Weigel's car.

¶2 Ms. Weigel sued Peter and Tamara in a negligence action. United Services Automobile Association [USAA], Peter's homeowner's insurer demanded that State Farm Fire and Casualty Company [State Farm], Tamara's homeowner's insurer, defend and indemnify Peter for the claim made by Ms. Weigel.[1] State Farm denied coverage for Peter because it was State Farm's opinion that Peter was not an insured under Tamara's homeowner's policy.[2] State Farm de-

---

1. The limits of Bradford's policy with USAA are $300,000.00, and the limits of Smith's policy with State Farm are $100,000.00.

2. In Ms. Smith's policy with State Farm, "Insured" means:

    a. You and your relatives who primarily reside in your household; and

    b. Any other persons under the age of 21 who primarily reside in your household and are in the care of a person described above.

      Under Section II, Insured also means:

    c. With respect to animals or watercraft to which this insurance applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4a or 4b. A person or organization having custody of these animals or watercraft in the course of a business or without permission of the owner is not an insured.

Bradford is not a resident of Ms. Smith's household.

fended Tamara in the lawsuit, which was settled as to Tamara. USAA defended Peter in the lawsuit and negotiated a settlement of Ms. Weigel's claims against Peter.[3]

¶ 3 USAA brought this action against State Farm seeking contribution for money paid in settlement, costs and attorney fees incurred in connection with its defense of Peter. Pursuant to a status conference between the parties, the parties waived their rights to a trial, and the trial court determined the matter would be tried through the briefs. Both State Farm and USAA filed motions for summary judgment wherein they stipulated to some facts, and to support other facts, the parties cited to deposition testimony in the record.

¶ 4 In its motion for summary judgment, State Farm argued Peter was not an insured under its policy because Peter was on the premises to babysit his grandchild, and had no legal responsibilities to Tamara's animals. The horse which escaped was insured under the State Farm policy, which provided liability coverage for persons legally responsible for the horse.

¶ 5 In its motion for summary judgment, USAA argued Peter was an insured under State Farm's policy and, as such, had a duty to defend Peter in the underlying lawsuit. USAA further argued the indemnity it paid should be borne on a pro rata basis between it and State Farm. It stated that because the policy limits are in the ratio of 3:1, State Farm should be responsible for 25% of the settlement amount paid to Ms. Weigel.

¶ 6 Additionally, USAA contended that because the policies' "other insurance" clauses do not address apportionment of defense costs, the concept of "equitable contribution" requires its costs in defending Peter should be shared equally by it and State Farm. On the other hand, State Farm argued that, absent a contract, it had no duty to contribute to USAA's defense costs.

¶ 7 In its August 27, 2004 order, the trial court determined that Peter was an insured under State Farm's policy, and, for that reason, State Farm is responsible for its pro rata share ($27,500.00) of the $110,000.00 set-

tlement of Ms. Weigel's lawsuit. Regarding the attorney fees incurred by USAA in defending Peter, the trial court determined that USAA recover no indemnification from State Farm. Both parties appeal.

¶ 8 In its counter-petition in error, State Farm argues the trial court erred in determining Peter is an insured under Tamara's State Farm homeowner's policy. Peter is an insured under State Farm's policy if he was "legally responsible" for Tamara's horse which escaped when he opened the gate. In *Security National Insurance Company v. Sequoyah Marina, Inc.*, 246 F.2d 830 (10th Cir.1957), the boat owner's liability insurance policy defined an insured as one "legally responsible" for animals or watercraft owned by an insured. Therein, the boat owner requested a mechanic repair the boat's motor. The mechanic took the boat's keys and discovered the boat, located at the dock, was out of oil. He put in some oil, replaced the spark plugs, and started the ignition. An explosion occurred resulting in damage to the dock. The U.S. District Court for the Eastern District of Oklahoma, held the mechanic was an insured under the boat owner's policy. The Tenth Circuit Court of Appeals affirmed, determining that "responsible" meant the mechanic had a duty to use the boat properly and would be liable and answerable for a failure to do so. The mechanic was in possession, charge, and control of the boat for the purpose of servicing it. He had the power to act and do whatever was incident to meet this end. The Court held the mechanic was legally responsible for the boat at the time of the explosion.

¶ 9 In this case, when asked whether he received specific instructions on caring for Tamara's horses, Peter testified in his deposition that "it was just expected, that, as before, if things needed to be done or if one of the animals was causing a ruckus or appeared to be in distress ... I was expected to kind of look after them and maybe call Tamara and let her know, because she's a veterinarian."

¶ 10 Both Tamara and Tim testified that in their absence it was their expectation that

---

3. USAA settled the case against Bradford for the sum of $110,000.

Peter was on the premises to not only care for the baby, but also to take care of the property and the animals in general. Both also testified that should a problem arise in the household or with the animals, they would expect Peter to take whatever remedial measures were necessary to correct the problem.

¶ 11 Tim further testified, "I think it was understood that the horses were out and this was a situation which could be potentially dangerous if the gate was opened or if my son was outdoors. So I think it was understood between myself and my parents that there was to be extra caution taken in that regard."

¶ 12 Tamara testified Peter had a key to her and Tim's house and gate and that when the gate was padlocked and the horses were out, Peter had the responsibility to be careful going in and out of the gate.

¶ 13 State Farm argues that any responsibility Peter had at the house "stemmed from the fact that he was on the property to babysit his grandchild." However, Peter also had the responsibility or the "duty" to avoid the real possibility of a horse escaping if he opened the gate. He was in charge of the household during the time he was babysitting and had the power to act to prevent the escape of the horse. *See Security National Insurance Company v. Sequoyah Marina, Inc., supra.* Therefore, Peter was "legally responsible" for Tamara's horse during the time he was on the property. Thus, Peter was an insured of State Farm.

¶ 14 In its petition in error, USAA contends the trial court erred in failing to equally apportion attorney fees incurred in its defense of Peter. It claims because there is no agreement between it and State Farm regarding the apportionment of attorney fees, the doctrine of equitable contribution applies, citing as authority *United States Fidelity and Guaranty Company v. Federated Rural Electric Insurance Corporation*, 2001 OK 81, 37 P.3d 828.

¶ 15 In *United States Fidelity and Guaranty Company, supra*, in answer to a certified question submitted by the Court of Appeals for the 10th Circuit, the Supreme·

Court declared that an excess insurer is not liable to the primary insurer under the doctrine of equitable subrogation. In its discussion distinguishing between the doctrines of equitable subrogation and equitable contribution, the Supreme Court noted that equitable contribution is the right to recover from a co-insurer who shares common liability with the party seeking contribution. The doctrine applies only when co-insurers have covered the same insured and the same particular risk at the same level of coverage.

¶ 16 However, in that case, the Supreme Court did not make a determination that the doctrine of equitable contribution is the law in Oklahoma. The law in Oklahoma is set forth in *Fidelity & Casualty Co. of New York, v. Ohio Casualty Insurance Company*, 1971 OK 31, 482 P.2d 924, wherein the Supreme Court held the duty of an insurance company to defend lawsuits against the insured is personal to each insurer, and that insurer is not entitled to divide the duty nor require contribution from another insurer, absent a specific contractual right. On the issue of attorney fees, the trial court properly determined that USAA "recover no indemnification from the [State Farm.]."

AFFIRMED.

JOPLIN, J., concurs.

MITCHELL, P.J., dissenting.

I disagree that Mr. Bradford was an insured under the State Farm Policy. He was not "legally responsible" for his daughter-in-law's horse when he was at his son and daughter-in-law's house to babysit his grandchild. *Security National Insurance Co. v. Sequoyah Marina*, 246 F.2d 830 (10th Cir. 1957), the case relied upon by the majority, is neither applicable nor analogous. It involves a mechanic who was physically working on and operating a boat. He was in actual possession and control of the boat. Thus, he was "legally responsible" for the boat and was held to be an insured under the boat owner's policy. Bradford's purpose for being on the property was to babysit. His purpose had nothing to do with horses. He was neither caring for nor using the horse. He may have been negligent in leaving the gate

open, but that fact does not make Bradford "legally responsible" for the animal as that phrase is used in the State Farm policy.