An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Carey v. City of Hastings*, 287 Neb. 1, 840 N.W.2d 868 (2013).

## VI. CONCLUSION

The district court erred in concluding that the Florida court's order denying leave to amend precluded appellants' complaint against Ward. We reverse the judgment of the district court that sustained Ward's motion to dismiss, and we remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

---

JENNIFER VAN KLEEK, APPELLANT, V. FARMERS INSURANCE
EXCHANGE, DOING BUSINESS AS FARMERS INSURANCE
GROUP, ALSO KNOWN AS "FARMERS," APPELLEE.

___ N.W.2d ___

Filed December 19, 2014.    No. S-13-1006.

1. **Insurance: Contracts: Appeal and Error.** The interpretation of an insurance policy presents a question of law that an appellate court decides independently of the trial court.
2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.
3. ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
4. **Insurance: Contracts: Appeal and Error.** An insurance policy is a contract, and an appellate court construes it like any other contract, according to the meaning of the terms that the parties have used.
5. ____: ____: ____. An appellate court gives terms in an insurance policy that are clear their plain and ordinary meaning as a reasonable person in the insured's position would understand them.
6. ____: ____: ____. An appellate court construes ambiguous terms in an insurance policy in favor of the insured.

7. **Insurance: Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting meanings.

8. ____: ____: ____. In the context of homeowner's insurance policies, coverage for a person "legally responsible" for designated property extends to those under a duty to use or operate the designated property properly and who would be liable and answerable for a failure to do so.

9. **Insurance: Contracts: Animals: Negligence: Liability.** In addition to an owner's liability under Neb. Rev. Stat. § 54-601 (Reissue 2010) and common-law liability for known vicious propensities, the keeper of a dog can be liable to injured third parties on a negligence theory.

10. **Animals: Negligence: Liability.** Once a person has possession or control of a dog, that person owes a duty of care to prevent unreasonable risks of harm posed by the foreseeable actions of the dog.

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Affirmed.

Richard J. Rensch and Sean P. Rensch, of Rensch & Rensch Law, P.C., L.L.O., for appellant.

Daniel P. Chesire and Anastasia Wagner, of Lamson, Dugan & Murray, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Connolly, J.

## SUMMARY

Jennifer Van Kleek agreed to watch Walter and Janet Chapman's dog while the Chapmans were out of town. While Van Kleek was caring for the dog, it bit her on her lower lip. Van Kleek filed a claim with the Chapmans' homeowner's insurer, Farmers Insurance Exchange (Farmers). Farmers rejected the claim because Van Kleek was also an insured and the policy excludes coverage for bodily injuries to insureds. The policy defines "**insured**" to include "any person . . . legally responsible" for covered animals. Van Kleek filed an action for declaratory judgment against Farmers, seeking a determination that the policy covered her claim. Farmers moved for summary judgment, and the district court sustained Farmers' motion, reasoning that Van Kleek was "legally responsible" for the dog because she fed and watered the dog

and let it out of the house while the Chapmans were away. We affirm.

## BACKGROUND

The Chapmans planned to take a trip from July 2 to 12, 2011, and asked Van Kleek, a family friend, to watch their dog. The dog, D.J., was a "Chow" weighing about 60 pounds. Walter Chapman testified that chows are "territorial" and that D.J. was not allowed out in public. Unless the Chapmans were home, they confined D.J. to the basement. When he needed to be outside, the Chapmans let D.J. into a fenced-in area behind their house.

Van Kleek and Walter Chapman both testified that the Chapmans instructed Van Kleek to feed, water, and let D.J. into the backyard while the Chapmans were gone. Van Kleek testified that she "assume[d]" that she "would have to go find [D.J.]" if he got loose or take him to a veterinarian if he became ill. Van Kleek had permission to stay at the Chapmans' house to make caring for D.J. more convenient, but the Chapmans did not compensate Van Kleek.

Van Kleek stayed at the Chapmans' house from July 2, 2011, to the morning of July 5. She was the only person in the house during this period. On July 5, Chapman let D.J. into the enclosed backyard. After she let D.J. back into the house, she bent over to give D.J. a biscuit, "just showing him affection." Van Kleek testified that D.J. "lunged" or "charge[d]" at her as she was bent over and bit her lip. The bite removed the "fatty part" of Van Kleek's lower lip, requiring reconstructive surgery.

The Chapmans are the named insureds on a homeowner's policy issued by Farmers. The policy has two sections: In section I, "Property Coverage," Farmers indemnifies insureds for losses to covered real and personal property. In section II, "Liability Coverage," Farmers promises to "pay those damages which an **insured** becomes legally obligated to pay because of . . . **bodily injury** . . . or . . . **property damage** resulting from an **occurrence**." Farmers also promises to pay for "necessary medical services" to a person with a bodily injury covered under section II. In addition to the named

insureds and certain other individuals, the policy defines
"**insured**"—for purposes of section II only—as

> any person or organization legally responsible for ani-
> mals or watercraft covered under Section II - Liability
> Coverage which are owned by you, or [another insured].
> Any person or organization using or having custody of
> these animals or watercraft in the course of any **business**
> or without permission of the owner is not an **insured**[.]

The policy also includes a number of exclusions from cover-
age under section II, including bodily injury to "any **insured**."
Courts sometimes refer to exclusions withholding coverage for
bodily injury to an insured as "intra-insured exclusions."[1]

Van Kleek sent a claim to Farmers for her injuries from the
bite, asserting that Walter Chapman was liable and that his
liability was covered under section II of the policy. Farmers
denied the claim because Van Kleek was "legally responsible"
for D.J. and, therefore, the intra-insured exclusion applied to
her claim. In a denial letter sent to Van Kleek, Farmers stated
that she was "clearly in a position of responsibility with regard
to the ongoing care and protection" of D.J. and that had D.J.
bitten someone else, "the injured party could have potentially
recovered for his/her damages from [Van Kleek] to the extent
of [her] negligence."

After Farmers denied her claim, Van Kleek filed a complaint
for declaratory judgment. Van Kleek alleged that she "owed no
legal duty to any third party or third-party's property" while
feeding and watering D.J. because D.J. was "confined in the
Chapmans' home" and not in her custody. Van Kleek requested
a judgment declaring that she was not an insured; that section
II of the policy covered her claim against Walter Chapman; and
that, as a beneficiary of the Chapmans' policy, she was entitled
to attorney fees and costs.

Farmers moved for summary judgment, arguing that
Van Kleek was "legally responsible" for D.J. and that the
intra-insured exclusion barred her claim. Van Kleek also
moved for summary judgment, asserting that there was no

---

[1] See, e.g., *Malik v. American Family Mut. Ins. Co.*, 243 Wis. 2d 27, 625
N.W.2d 640 (Wis. App. 2001).

genuine issue of material fact that the policy covered her claim against Walter Chapman.

The district court granted Farmers' motion for summary judgment. The court concluded that "legally responsible" is not ambiguous and framed the issue as whether Van Kleek had "legal control" over D.J. when the dog bit her. Emphasizing that Van Kleek was the only person responsible for feeding, watering, and letting D.J. into the backyard while the Chapmans were gone, the court determined that she was "legally responsible" for the dog. The court concluded that the policy did not cover her bodily injury because of the intra-insured exclusion.

## ASSIGNMENTS OF ERROR

Van Kleek assigns, restated, that the district court erred by (1) granting Farmers' motion for summary judgment and (2) overruling her motion for summary judgment.

## STANDARD OF REVIEW

[1] The interpretation of an insurance policy presents a question of law that we decide independently of the trial court.[2]

[2,3] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[3] We will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[4]

## ANALYSIS

Van Kleek argues that she was not "an insured" because she was not "legally responsible" for D.J. Initially, she asserts

---

[2] *American Family Mut. Ins. Co. v. Regent Ins. Co.*, 288 Neb. 25, 846 N.W.2d 170 (2014).

[3] *Id.*

[4] *Id.*

that the term "'legally responsible for'" animals is ambiguous because it might refer to a relationship between herself and D.J., but she admits that this is not the "most logical" reading of the language.[5] The thrust of Van Kleek's argument is that she is "legally responsible" only if "a third party is exposed to the dangers of DJ while she is DJ's handler."[6] Because she did not let D.J. into "the public domain where third parties reside,"[7] Van Kleek concludes that no third party was "exposed to the dangers of DJ" and that therefore, she was not an insured. Farmers responds that Van Kleek was "legally responsible" for D.J. because "[s]he was the person responsible for maintaining the dog's well-being and ensuring he was fed, watered, and allowed in the back yard to relieve himself."[8]

[4-7] We begin by reciting some principles of insurance policy interpretation. An insurance policy is a contract, and we construe it like any other contract, according to the meaning of the terms that the parties have used.[9] We give terms that are clear their plain and ordinary meaning as a reasonable person in the insured's position would understand them.[10] But we construe ambiguous terms in favor of the insured.[11] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting meanings.[12]

Courts have generally interpreted "legally responsible" to mean a legal duty created by custody, control, or possession of the designated property.[13] For example, in *Security*

---

[5] Brief for appellant at 15.

[6] *Id.* at 20.

[7] *Id.* at 17.

[8] Brief for appellee at 11-12.

[9] *American Fam. Mut. Ins. Co. v. Wheeler*, 287 Neb. 250, 842 N.W.2d 100 (2014).

[10] *Id.*

[11] See *id.*

[12] See *id.*

[13] See, *Boettger v. Early American Ins. Co.*, 469 So. 2d 495 (La. App. 1985); *Burglass v. U.S. Fidelity and Guar. Co.*, 427 So. 2d 596 (La. App. 1983).

*National Insurance Co. v. Sequoyah Marina*,[14] a boat owner asked a mechanic to repair the motor. After the mechanic put some oil into the engine and replaced the spark plugs, he pressed the starter button and the boat exploded. The plaintiffs, individuals near the boat who suffered property damage, brought actions against the boat owner, the mechanic, and the insurer that issued the boat owner a homeowner's policy. The boat owner's policy defined "insured" as, "'with respect to animals and watercraft owned by an insured, any person or organization legally responsible therefor.'"[15] The boat owner's insurer sought a declaratory judgment that the mechanic was not an insured.

The court reasoned that whether the mechanic was "legally responsible" for the boat depended on whether he owed duties or was open to liability arising from his dominion over the craft:

> We think "responsible" as here used means [that the mechanic was] under a duty to use or operate the boat or the power plant and equipment thereof properly and [would be] liable and answerable for a failure so to do. It may be implied from the physical possession of the boat by [the mechanic] and his authority and power to act with respect thereto.[16]

Under this definition, the court held that the mechanic was "legally responsible" for the boat when it exploded. The mechanic was "in possession, charge and control of the boat" and was authorized to exercise his "independent judgment with respect to what was necessary to be done."[17] Of particular importance was the mechanic's "implied authority" to take the boat on a test run.[18] The court had "no doubt" that the mechanic would have been liable for any accident during a test

---

[14] *Security National Insurance Co. v. Sequoyah Marina*, 246 F.2d 830 (10th Cir. 1957).

[15] *Id.* at 832.

[16] *Id.*

[17] *Id.* at 832-33.

[18] *Id.* at 833.

run.[19] That the mechanic never had an opportunity to operate the boat did not matter, since it was "the existence of the power and not its exercise which determines the relationship of [the mechanic] to the boat."[20]

Similarly, a court determined that a person was "legally responsible" for an animal because he had the power to exercise control over it, even if he did not intend to exercise control. In *United Services Auto. Ass'n v. State Farm*,[21] a grandfather came to his son and daughter-in-law's house to help babysit his grandchild. His daughter-in-law kept horses inside a gated area in the yard. Asked whether he had received any horse-related instructions, the grandfather testified "'it was just expected'" that he would look after them or call his daughter-in-law "'if things needed to be done or if one of the animals was causing a ruckus.'"[22] After spending some time in the house, the grandfather opened the gate and drove his car into the yard. A horse escaped through the opening and was involved in a collision with a third party. The daughter-in-law was the named insured in a homeowner's policy issued by the defendant insurer, which policy defined "insured" as, "'[w]ith respect to animals or watercraft to which this insurance applies, the person or organization legally responsible for them.'"[23] The issue on appeal was whether the grandfather was "legally responsible" for the horse.

The insurer argued that the grandfather was not an insured because he was on the premises to watch his grandchild, not care for the horses. The court disagreed, reasoning that the grandfather's general responsibility over the premises extended to the animals corralled outside the house:

> [The grandfather] had the responsibility or the "duty" to avoid the real possibility of a horse escaping if he opened

---

[19] *Id.*

[20] *Id.*

[21] *United Services Auto. Ass'n v. State Farm*, 110 P.3d 570 (Okla. Civ. App. 2004).

[22] *Id.* at 572.

[23] *Id.* at 571 n.2.

the gate. He was in charge of the household during the time he was babysitting and had the power to act to prevent the escape of the horse. . . . Therefore, [the grandfather] was "legally responsible" for [his daughter-in-law's] horse during the time he was on the property.[24]

So, despite the lack of a "purpose" to exercise control over the horse, the court held that the grandfather was "legally responsible" for the animal.

In a case with facts analogous to those before us, the Wisconsin Court of Appeals held that a person was "legally responsible" for a dog she was caring for as a favor to vacationing friends. In *Malik v. American Family Mut. Ins. Co.*,[25] Christina Malik brought the Matthew and Patricia Herman's springer spaniel to her home to care for it while the Hermans were on vacation. The dog bit Malik and she sued the Hermans and their homeowner's insurer. The policy issued to the Hermans defined "insured" to include "'any person or organization legally responsible for a watercraft or animal owned by [an insured] to which Section II Coverages apply.'"[26] Under the "'**Intra-insured Suits**'" exclusion in section II of the policy, "'**bodily injury** to any **insured**'" was not covered.[27] The Hermans' insurer refused to defend or indemnify them from Malik's suit on the ground that Malik herself was an insured.

Similar to Van Kleek's argument, Malik argued that a reasonable insured would understand the "legally responsible" language to extend coverage "so that if a person who is legally responsible for the Hermans' dog becomes liable to a third person, the person responsible for the dog, as well as the Hermans, is covered under the policy."[28] Malik contended that a reasonable insured would not expect the expanded definition of "insured" to limit the Hermans' coverage for injuries

---

[24] *Id.* at 573.

[25] *Malik v. American Family Mut. Ins. Co., supra* note 1.

[26] *Id.* at 33, 625 N.W.2d at 643.

[27] *Id.* at 34, 625 N.W.2d at 643.

[28] *Id.* at 35, 625 N.W.2d at 644.

caused by their dog. But the court concluded that "[b]ased on the undisputed facts, Malik was legally responsible for an animal owned by the Hermans at the time she was injured," and that therefore, she was an insured under the policy issued to the Hermans.[29] Notably, a Wisconsin statute imposed strict liability for damages caused by a dog on "'any person who owns, harbors or keeps'" the dog.[30] Malik did not dispute that she was a "keeper" of the dog.[31]

[8-10] We conclude that Farmers is entitled to summary judgment because there is no genuine issue that Van Kleek was "legally responsible" for D.J. In the context of homeowner's insurance policies, coverage for a person "legally responsible" for designated property extends to those "under a duty to use or operate the designated property properly and who would be liable and answerable for a failure to do so."[32] In addition to an owner's liability under Neb. Rev. Stat. § 54-601 (Reissue 2010) and common-law liability for known vicious propensities, the keeper of a dog can be liable to injured third parties on a negligence theory.[33] Once a person has possession or control of a dog, that person owes a duty of care to prevent unreasonable risks of harm posed by the foreseeable actions of the dog.[34]

The control Van Kleek exercised over D.J. obligated her to exercise care to prevent unreasonable risks of harm to third parties from D.J.'s behavior. Van Kleek testified that she was responsible for feeding, watering, and letting D.J. in and out of the house while the Chapmans were away. She also assumed that if D.J. got loose, she "would have to go find him," and

---

[29] *Id.* at 39, 625 N.W.2d at 646.

[30] *Id.* at 40, 625 N.W.2d at 646.

[31] *Id.*

[32] 9 Steven Plitt et al., Couch on Insurance § 126:7 at 126-23 (2008).

[33] 4 Am. Jur. 2d *Animals* § 72 (2007). See, also, *Guzman v. Barth*, 250 Neb. 763, 552 N.W.2d 299 (1996); *Morgan v. Marquis*, 50 A.3d 1 (Me. 2012); Jonathan R. Shulan, Note, *Animal Law—When Dogs Bite: A Fair, Effective, and Comprehensive Solution to the Contemporary Problem of Dog Attacks*, 32 U. Ark. Little Rock L. Rev. 259 (2010).

[34] See *Fields v. Hayden*, 81 A.3d 367 (Me. 2013).

she testified that she would have sought veterinary care if D.J. became sick. Van Kleek alone exercised control over D.J.'s position relative to the outside world. That she did not breach a duty of care by, for example, carelessly leaving the gate open or bringing D.J. into "the public domain where third parties reside,"[35] does not mean that she owed no duty.

## CONCLUSION

Van Kleek was an insured under the policy because she was "legally responsible" for the Chapmans' dog. As an insured, the unambiguous terms of the policy exclude coverage of her injury. Accordingly, Farmers is entitled to summary judgment.

Affirmed.

---

[35] Brief for appellant at 17.

---

Delores Shaffer, as Guardian and next friend of Brian Shaffer, an incapacitated person, appellee, v. Nebraska Department of Health and Human Services and Vivianne M. Chaumont, director, Division of Medicaid and Long-Term Care, appellees, and Coventry Health Care of Nebraska, Inc., appellant.

___ N.W.2d ___

Filed December 19, 2014.    No. S-14-165.

1. **Administrative Law: Final Orders: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.
2. **Administrative Law: Judgments: Appeal and Error.** When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.
3. **Judgments: Appeal and Error.** Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.